GARNER HEALTH LAW CORPORATION
CRAIG B. GARNER (CA SBN 177971)
craig@garnerhealth.com
13274 Fiji Way, Suite 250
Marina Del Rey, CA 90292
Telephone: (310) 458-1560
Facsimile: (310) 694-9025

ISABELLE M. SMITH, A PROFESSIONAL CORPORATION
ISABELLE M. SMITH (CA SBN 199867)
isabelle@smithlawcorp.com
2618 San Miguel Drive, Suite 179
Newport Beach, CA 92660
Telephone: (949) 291-0953

Attorneys for PLAINTIFF HALO UNLIMITED, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| HALO UNLIMITED, INC., a Nevada corporation doing business as Infant Hearing Screening Specialists,<br><br>Plaintiff,<br><br>v.<br><br>ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY, a California corporation; BLUE CROSS OF CALIFORNIA, a California corporation; ANTHEM, INC., an Indiana corporation doing business as ANTHEM HEALTH, INC.; and DOES 1 through 40, inclusive,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR**<br><br>1. BREACH OF EMPLOYEE WELFARE BENEFIT PLAN (RECOVERY OF PLAN BENEFITS UNDER E.R.I.S.A.) 29 U.S.C. § 1132(a)(1)(b)<br>2. BREACH OF CONTRACT (THIRD PARTY BENEFICIARY)<br>3. BREACH OF CONTRACT (ASSIGNMENT)<br>4. OPEN BOOK ACCOUNT<br>5. PROMISSORY ESTOPPEL<br>6. *QUANTUM MERUIT*<br>7. UNFAIR COMPETITION<br>8. INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS<br><br>[CONTINUED ON NEXT PAGE] |

9.  NEGLIGENT INTERFERENCE
    WITH CONTRACTUAL
    RELATIONS

10. INTENTIONAL
    INTERFERENCE WITH
    PROSPECTIVE ECONOMIC
    ADVANTAGE
11. NEGLIGENT INTERFERENCE
    WITH PROSPECTIVE
    ECONOMIC ADVANTAGE
12. CIVIL R.I.C.O. (18 U.S.C. §
    1962)

DEMAND FOR JURY TRIAL

1    PLAINTIFF HALO UNLIMITED, INC., a Nevada corporation, doing

2    business as Infant Hearing Screening Specialists ("Plaintiff"), complains and alleges

3    in this Complaint (the "Complaint") against ANTHEM BLUE CROSS LIFE AND

4    HEALTH INSURANCE COMPANY, a California corporation ("Anthem Blue

5    Cross"), BLUE CROSS OF CALIFORNIA,  California corporation ("Blue Cross"),

6    ANTHEM, INC., an Indiana corporation doing business as ANTHEM HEALTH,

7    INC. ("Anthem Health", collectively with Anthem Blue Cross and Blue Cross

8    referred to hereinafter as "Anthem") and Does 1 through 40 (the "Doe Defendants",

9    collectively with Anthem referred to hereinafter as "Defendants") as follows:

10    **THE PARTIES**

11    **1.**    Plaintiff is a corporation organized and existing under the laws of the

12    State of Nevada, with its primary place of business located in Corona, California.

13    **2.**    Defendant Anthem Blue Cross is and at all relevant times was a

14    corporation corporation licensed to do business in and is and was doing business in

15    the State of California as a provider of health insurance benefits.  Plaintiff is

16    informed and believes, and based thereon alleges, that Anthem Blue Cross is

17    licensed by the California Department of Insurance and/or the California

18    Department of Managed Health Care to transact the business of insurance in the

19    State of California, is in fact transacting the business of insurance in the State of

20    California and is thereby subject to the laws and regulations of the State of

21    California.

22    **3.**    Defendant Blue Cross is and at all relevant times was a California

23    corporation licensed to do business in and is and was doing business in the State of

24    California as a provider of health insurance benefits.  Plaintiff is informed and

25    believes, and based thereon alleges, that at all relevant times was licensed by the

26    California Department of Insurance and/or the California Department of Managed

27    Health Care to transact the business of insurance in the State of California, was in

28

fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

4.      Defendant Anthem Health is and at all relevant times was an Indiana corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits.  Plaintiff is informed and believes, and based thereon alleges, that Anthem Health at all relevant times was licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact the business of insurance in the State of California, was in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

5.      The true names and capacities of the Doe Defendants are unknown to Plaintiff at this time, and Plaintiff therefore sues such defendants by such fictitious names.  Plaintiff is informed and believes, and based thereon alleges, that the Doe Defendants are those individuals, corporations and/or other business entities that are also in some fashion legally responsible for the actions, events and circumstances complained of herein, and may be financially responsible to Plaintiff for the services Plaintiff has provided as alleged in this Complaint.  This Complaint will be amended to allege the Doe Defendants' true names and capacities when they have been ascertained.

6.      At all relevant times herein, unless otherwise indicated, Defendants were the agents and/or employees of each of the remaining Defendants and were at all times acting within the purpose and scope of said agency and employment, and each of the Defendants has ratified and approved the acts of the agent.  At all relevant times herein, Defendants had actual or ostensible authority to act on each other's behalf in certifying or authorizing the provision of services, processing and administering the claims and appeals, pricing the claims, approving or denying the claims, directing each other as to whether and/or how to pay claims, issuing

remittance advices and explanation of benefits ("EOB") statements, and making payments to Plaintiff and/or the Patients.

## JURISDICTION AND VENUE

7.    Plaintiff brings this action for monetary relief pursuant to Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(1)(B). This Court has subject matter jurisdiction over Plaintiff's claims because the action seeks to enforce rights under ERISA pursuant to §§ 502(e) and (f), 29 U.S.C. §§ 1132(e) and (f), and 28 U.S.C. § 1331.

8.    Plaintiff also asserts state law claims for relief in this Complaint over which this Court can assert pendant jurisdiction as such claims arise from a nucleus of facts common to both the state law and ERISA claims. *Nishimoto v. Federman Bachrach & Assoc.*, 903 F.2d 709 (9th Cir. 1990).

9.    This Judicial District is the proper venue for this action pursuant to 29 U.S.C. § 1132(e)(2), 28 U.S.C. § 1391(c)(2) and 28 U.S.C. § 1392(d) because Anthem Blue Cross resides in this Judicial District and/or Defendants administer, in part, the applicable plans in this Judicial District, as well as a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this Judicial District.

## INTRODUCTION

10.    The 2010 Patient Protection and Affordable Care Act (the "ACA") required health insurance plans, including those sold by Anthem, to provide ten categories of "essential health benefits," maternity and newborn care.  42 U.S.C. § 18022(b)(1)(D).  In addition, under the ACA, states such as California established on-line health insurance exchanges (the "Exchanges") where entities such as Anthem had the ability to market new ACA-compliant plans.  Plaintiff is informed and believes, and based thereon alleges, that Anthem marketed new plans that reimbursed out-of-network providers of maternity and newborn care treatment like Plaintiff.

11.     According to the California Department of Health Care Services ("DHCS"), the incidence of permanent significant hearing loss is approximately 2-4 per every 1,000 infants, and it is the most common congenital condition for which there is a screening program.  California's newborn hearing screening program is estimated to identify approximately 1,000 infants with hearing loss each year. Infants who do not pass a hearing test are linked quickly and efficiently with appropriate diagnostic and treatment services, and with other intervention services, needed for the best possible outcome.  According to the DHCS, infants with hearing loss, who have appropriate diagnosis, treatment and early intervention services initiated before six months of age, can develop normal language and communication skills.

12.     At all relevant times herein, Plaintiff was a non-contracting (as to Anthem) provider of maternity and newborn care services, including but not limited to the provision of newborn hearing screening on infants during their hospital birth admission or while receiving care in the intensive care newborn nursery (the "Services").  As a non-contracting provider of the Services, Plaintiff is also referred to as a "non-contracted" or "out-of-network" provider.

13.     Plaintiff is informed and believes, and based thereon alleges, that Anthem generally enters into private agreements with health care providers and facilities, including but not limited to acute care hospitals, extending to them "in network" provider status.  Out-of-network claims are distinguished by the fact that when members/patients obtain health care services from an out-of-network provider, like Plaintiff, members/patients are responsible for charges that the plan might not cover, or that exceed Anthem's reimbursement obligation to members/patients under respective plans.

14.     Plaintiff is informed and believes, and based thereon alleges, that this practice is known to Anthem and others in the industry as "steerage", which is a method by which facilities that maintain in-network status may refer patients to

each other pursuant to in-network agreements.  Plaintiff is further informed and believes, and based thereon alleges, that Anthem concludes that referrals to and amongst facilities within the in-network community are permitted without fear of reprisal by state regulatory commissions that prohibit patient referrals for a fee, and the in-network status also protects members/patients from incurring excessive facility charges that are often imposed when a patient uses an out-of-network facility.

15.    Plaintiff provided and rendered the Services to members, subscribers and insured of Anthem, each of whom received the Services from Plaintiff and hereinafter referred to collectively as the "Patients".  As a result, Plaintiff became entitled to reimbursement, remuneration and/or payment from Anthem for the Services Plaintiff provided to the Patients.

16.    Plaintiff is informed and believes, and based thereon alleges, that some or all of the Patients had express coverage for the Services as a delineated benefit of an ERISA plan, summary plan descriptions, and policies which were underwritten and/or administered by Anthem and/or the Doe Defendants (collectively an "ERISA Plan" or the "ERISA Plans").

17.    Plaintiff is informed and believes, and based thereon alleges, that some or all of the Patients were plan participants and/or beneficiaries of an Employee Welfare Plan under ERISA, as those terms are defined by 20 U.S.C. § 1002. Plaintiff is further informed and believes, and based thereon alleges, that some or all of the Patients were entitled to be reimbursed for the cost of the Services as the benefit of the subject Anthem plans, policies and insurance agreements governing the relationship between each Patient and Anthem (the "Anthem Plans", and collectively with the ERISA Plans the "Plans").  Each of the Plans provided coverage for both in and out-of-network providers like Plaintiff and for treatment by providers of the Services like Plaintiff on an outpatient or inpatient basis.

18.     Plaintiff is informed and believes, and based thereon alleges, that the Patients had preferred provider organization ("PPO") plan benefits or point of service ("POS") plan benefits that allowed them to seek medically necessary benefits, whether in-network or not, and were entitled to reimbursement for their claims because Plaintiff was an out-of-network provider of the Services.  The Patients' claims should not have been denied or underpaid as the Plans provide coverage for the Services performed by Plaintiff.

19.     Plaintiff is informed and believes, and based thereon alleges, that each of the Patients whose claims are at issue in this lawsuit required the Services.  Each of the Patients chose PPO insurance rather than health maintenance organization ("HMO") insurance through their employers so that they could receive plan benefits from the physicians and other medical providers of their choice, regardless of whether the health care practitioners were in-network or out-of-network with Anthem.  Defendants, who administer and/or underwrite the PPO insurance for the Patient's employers, advertise, publicize and represent on their websites, in their literature and in commercials that the benefit of their PPO policies include the freedom to choose any doctor for any and all health care needs.

20.     As an essential health benefit,  Plaintiff is informed and believes, and based thereon alleges, that Defendants authorized the Services for the Patients and that each of the Patients had coverage which included coverage for the Services provided by Plaintiff.

21.     Plaintiff is informed and believes, and based thereon alleges, that no provisions in any of the Plans, whether in the Summary Plan Descriptions ("SPDs") and/or Evidence of Coverage ("EOC") documents justified the failure of Anthem to pay the fees for services charged by Plaintiff, whether by underpayment or to pay nothing.  These actions by Defendants were arbitrary, capricious and improper.

22.     Plaintiff is informed and believes, and based thereon alleges, that no provisions in the Plans justified the failure to issue a final decision or denial on any

of the Patient claims, and no provision in the subject Plans justified the failure and refusal of Anthem to issue an EOB statement, delineating and explaining the justification or rationale for refusing to pay, cover and reimburse the Patient claims or to adjust those claims.  These failures and refusals by Anthem were therefore arbitrary, capricious and a breach of Anthem's fiduciary duties to plan participants. These failures and refusals were also violative of regulations promulgated under ERISA by the Department of Labor, which require that claims be adjudicated by the claims administrator (*e.g.,* Anthem) within 45 days after receipt of the claim and were also violative of the Plans and SPDs issued and adopted by Anthem.

23.     Plaintiff is informed and believes, and based thereon alleges, that for each Plan involved in this lawsuit, the terms of the Plan: (a) provided coverage for the Services rendered by Plaintiff to each Patient for whom reimbursement, payment and coverage is sought; and (2) dictated that these covered services be paid according to a specific reimbursement rate (such as the reasonable and customary fees for services charged by Plaintiff or according to other formulae or allowable rates expressly and specifically provided in the Plans).

24.     Each of the Patients have assigned all of their legal and equitable rights to payment and to assert ERISA remedies under the Plans to Plaintiff in writing, including but not limited to their rights to recover the benefits owed to them by Anthem to Plaintiff, by and through an irrevocable assignment of all of their rights, title and interest in and to the claims against Anthem (the "Assignments").  These Assignments conferred upon Plaintiff the right to stand in the shoes of the Patients and to assert all of the rights held by the Patients as to Anthem and/or as to the Plans administered by Anthem, including but not limited to all rights, powers and equitable remedies of the Patients, the right of Plaintiff to substitute in as a party or plaintiff in any past, present or future litigation regarding the Patient's claims against Anthem, the right to the proceeds of all legal fees and costs, if specifically awarded, and any interest if specifically awarded, and the right to make and effect

collections, including the commencement of legal proceedings on behalf of the
Patients.  The language from the Assignments includes, in part:

    **a.**    "I authorize direct payment to the Hospital, Hospital-Based
Physicians and other practitioners involved in my care and treatment
of all insurance benefits payable to me or on my behalf for services
provided during this hospitalization, or for outpatient services or
emergency services if applicable."

    **b.**    "The undersigned assigns and hereby authorizes, whether he/she
signs as agent or as patient, direct payment to any hospital-based
physician of any insurance of health plan benefits otherwise payable
to or on behalf of the patient for professional services rendered
during this hospitalization or for outpatient services, including
emergency services if rendered, at a rate not to exceed such
physician's regular charges."

    **c.**    "In exchange for, and in connection with, any and all of the services
provided to me ("Services") by the hospital, whether I sign as
patient or agent, I irrevocably assign to the hospital all of my rights ,
benefits, privileges, protections, claims and any other interests of
any kind whatsoever, without limitation, including direct payment to
the hospital for the Services, appeal rights, rights to fiduciary duties,
rights to sue, rights to payment and rights to penalties or interest
(collectively "Rights") that I had, have or may have in the future
pursuant to, or in connection with, any insurance plan, health benefit
plan, trust fund or other source of payment, insurance, indemnity or
health or medical coverage of any kind (collectively "Health
Coverage"), such that I am hereby transferring all and retaining
none of these Rights under any Health Coverage to which I am now,
previously or may be entitled to in the future.  To the same extent as

authorized under this irrevocable assignment of Rights, I also authorize assignment to physician(s) for medical treatment and services rendered during my hospitalization of outpatient care."

25.    In compliance with the terms of each Plan, Plaintiff and/or the Patients have exhausted any and all claims review, grievance, administrative appeals, and appeals requirements by submitting letters, appeals, grievances, requests for reconsideration and request for payment to Anthem.

26.    Alternatively, all review, appeal, administrative grievances or complaint procedures are excused as a matter of law, are violative of Plaintiff's due process rights, are or would be futile, or are otherwise unlawful, null, void and unenforceable.  Anthem's pattern of behavior and refusal to reimburse Plaintiff rendered all potential administrative remedies futile.  As a result of Anthem's actions and/or omissions, Anthem is estopped from asserting that Plaintiff has failed to exhaust its administrative remedies under ERISA.  Alternatively, by Anthem's failure and refusal to establish, maintain and follow a reasonable claim procedure process, Plaintiff and/or its Patients have exhausted the administrative remedies available under the Plans and are entitled to pursue this action, inasmuch as Defendants have failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim, in violation of 29 C.F.R. § 2560.503-1(l).

## PLAINTIFF'S CLAIMS AGAINST ANTHEM

27.    The Patients have not been identified by name in this Complaint to protect their right of privacy.  Plaintiff will provide an unredacted list of the patient claims at issue in an amended pleading, if required by the Court, or to counsel for Defendants upon appearance.  Plaintiff is informed and believes, and based thereon alleges, that the amount still due and owing from Anthem to Plaintiff resulting from the Services Plaintiff provided to the Patients is in excess of $5.9 million.

**28.**     Each of the Patients received the Services from Plaintiff.  The Services are for Current Procedural Terminology ("CPT") Code 92586.  Federal law recognizes that audiological diagnostic testing is a covered benefit under Medicare, and California has implemented a statewide comprehensive Newborn Hearing Screening Program ("NHSP"), the purpose of which is to identify hearing loss in infants and guide families to the appropriate services needed to develop communication skills.

**29.**     California's DHCS has specifically stated that California cannot dictate the fee that NHSP certified hospitals and outpatient providers charge for newborn hearing screening services.

**30.**     Payments are due and owing by Defendants to Plaintiff for the Services provided to the Patients, all of whom were insured, members, policy holders, certificate holders or otherwise covered for charges by Plaintiff through policies or certificates of insurance issued, underwritten and/or administered by Defendants.

**31.**     Plaintiff is informed and believes, and based thereon alleges, that each of the Patients for whom claims are at issue was an insured of Anthem either as a subscriber to coverage or a dependent of a subscriber to coverage under a policy or certificate of insurance issued, administered and/or underwritten by Defendants. Plaintiff is further informed and believes, and based therein alleges, that each of the Patients for whom claims are at issue was covered by a valid insurance agreement with Anthem for the specific purpose of ensuring that the Patients would have access to medically necessary treatments, care, procedures and related care by out-of-network providers such as Plaintiff.

**32.**     In the alternative, Plaintiff is informed and believes, and based thereon alleges, that some of the Patients for whom claims are at issue were covered by self-funded plans which were administered by Anthem.  The identify of those Plans which are self-funded is known to Anthem, but is presently unknown to Plaintiff. Those self-funded Plans provided coverage to the Patients either as a subscriber to

coverage or as a dependent of a subscriber to coverage under the certificate of coverage administered by Defendants.  For these self-funded plans, Plaintiff is informed and believes, and based thereon alleges, that Anthem was a claim fiduciary, plan fiduciary and administrator charged with making claim determinations on behalf of the Plans.

33.    Plaintiff is informed and believes, and based thereon alleges, that each of the Patients for whom claims are at issue was covered by a valid benefit Plan, providing coverage for the Services, for the specific purpose of ensuring that the Patients would have access to medically necessary treatments, care and procedures by out-of-network providers like Plaintiff and ensuring Anthem would pay for the health care expenses incurred by the Patients for the services rendered by Plaintiff.

34.    At all relevant times, each of the Patients received the Services from Plaintiff.  Upon rendition of the Services to each of the Patients, each of the Patients became legally indebted, responsible and liable to Plaintiff for the full cost of and for payment of the Services.  Prior to the rendition of care by Plaintiff, each of Patients guaranteed that they would be legally responsible, liable and indebted for the full cost of and for payment of those services to be rendered by Plaintiff.

35.    Each of the Patients requested treatment and professional services, including the Services.  Each of the Patients received the Services from Plaintiff after entering into a written admission agreements in which the Patients agreed to be obligated, legally responsible and liable for the full amount of the charges incurred for treatment and professional services, including the Services.

36.    Each of the Patients presented his or her insurance card, which card identified the Patient as an insured, subscriber and/or member of Anthem.  These identification cards, which were issued by Anthem, did not identify whether the coverage was underwritten by Anthem as an insurer or whether Anthem was acting as a third-party administrator of a self-funded plan.

**37.**     As a result of Anthem's offer to pay for the Services rendered by
Plaintiff to each of the Patients, Plaintiff was induced to and did provide and render
the Services to the Patients at great cost to itself, fully expecting that it would be
paid for the Services after submission of claims to Anthem.  This expectation was
further buttressed by the longstanding interactions, and business practices and
customs that had been established between Plaintiff and Anthem over several years,
which had resulted in Anthem's processing and payments of hundreds of prior
claims on behalf of Patients who had received the Services from Plaintiff.

**38.**     Anthem never advised Plaintiff whether a Patient's claim was insured
or underwritten by Anthem, or whether Anthem was acting in the capacity of an
administrator only in adjusting that claim on behalf of a self-funded plan.  To date,
Anthem has not identified whether or which of the subject claims are insured,
underwritten or only administered by Anthem.  As appropriate, Plaintiff will seek
leave to identify any and all self-funded Plans as self-funded and identify the
proper name of that entity.

**39.**     At all relevant times herein, representatives and agents of Defendants
advised Plaintiff that each of the Patients was insured and covered for and was an
eligible member or subscriber entitled to coverage under respective Plans for the
Services Plaintiff rendered, that Plaintiff was authorized to render the Services, and
that Anthem would pay Plaintiff for performance of the Services rendered by
Plaintiff upon its submission of claim forms and invoices to Anthem.

**40.**     At all relevant times herein, Anthem led Plaintiff to believe that
Plaintiff would be paid a portion or percentage of its total billed charges, equivalent
to the usual customary and reasonable amount charged by other similar provider in
the same geographical area or that other methodologies would be used to determine
the amount that Anthem would pay Plaintiff.  In reliance upon the representations
of Anthem that Anthem would pay for the Services to be rendered to each Patient,

Plaintiff was induced to, and did provide and render the Services to each of the Patients.

**41.**     Plaintiff is a beneficiary (as that term is defined by 29 U.S.C. § 1002(8)) of the benefits payable under the subject Plans and insurance policies issued to and covering the Patients and by virtue of the assignment of rights given by each of the Patients to Plaintiff.

**42.**     At all relevant times herein, Plaintiff was authorized by law to act on behalf of the Patient with respect to the filing of claims with Anthem, demanding production of documents from Anthem, filing appeals on behalf of the Patients with Anthem, and otherwise pursuing actions on behalf of the Patients with respect to the Patients' Plans in accordance with 29 C.F.R. § 2560.503.1(b)(4).

**43.**     Plaintiff is not privy to, nor does it possess or have access to any of the EOC documents, SPDs, Plan Documents, policies or Certificates of Insurance which are issued to the Patients.  As such, Plaintiff does not have knowledge of or access to the definition of an "allowable amount" or "allowable benefit" as that term is defined or used by Anthem, at any time prior to the date that Anthem processes, adjusts and pays each claim.  These definitions were not imparted by Anthem to Plaintiff during any insurance verification or authorization process.

**44.**     At all relevant times herein, Anthem has improperly or failed to pay and refused to pay Plaintiff for the Services rendered to Anthem's insureds, subscribers and members by Plaintiff.  For each of the Patient claims at issue in this action, Plaintiff provided the Services to members and insureds of Anthem.

**45.**     Following the rendition of the Services by Plaintiff to the Patients, invoices, bill and claims were submitted to Defendants for adjustment and payment.  Plaintiff also provided medical records to Anthem for the treatment it provided to the Patients, if requested.

**46.**     For each of the claims at issue, Anthem failed and refused to adjust the claims and to issue EOB statements to Plaintiff in a timely manner as required

by federal law. These failures constituted an effective denial of benefits, although an actual denial of benefits was not communicated by Anthem. By virtue of its failure and refusal to issue EOB statements and to adjust the claims, Plaintiff was precluded and inhibited from appealing the effective denial of payment on the subject claims.

47. For each of the claims at issue in this case, Anthem failed and refused to complete the claim examination process, delayed issuing EOB and/or explanation of payment ("EOP") statements to Plaintiff, has requested unnecessary and irrelevant information and documentation from Plaintiff which has no bearing on or relevance to the claim examination process, has failed and refused to provide notification of the reasons for its failure and refusal to pay benefits and has failed to engage in a meaningful appeal process with Plaintiff. For each of the claims at issue in this case, Anthem has failed and refused to pay benefits in any amount whatsoever, leaving the entire charges unpaid and owed.

48. To the extent Anthem issued any EOB statements, Anthem did not explain how the claims were adjusted, disallowed or denied, and Anthem provided vague, ambiguous and uncertain explanations for the manner by which Anthem based its claim determination. To the extent Anthem issued any EOB statements, each was uninformative, false and misleading, thereby depriving Plaintiff and the Patients from an ability to intelligently engage in the appeal process or understand the basis and rationale for Anthem's denial of benefits.

49. Plaintiff is informed and believes, and based thereon alleges, that Anthem's actions violated 29 U.S.C. § 1133, 29 C.F.R. § 2560.503-1(g) and 26 U.S.C. § 9812(4), all due to Anthem's failure to provide a description of the Plain's review procedures and the time limits or deadlines applicable to such procedures.

50. In each of the EOB statements issued by Anthem, if any, Anthem failed to advise Plaintiff and/or the Patients of the right of the Patients and/or

Plaintiff to appeal the adverse claim determination made by Anthem in any of the EOB statements concerning the right to appeal, file a grievance, seek reconsideration or otherwise engage in an administrative review process, as required by 29 U.S.C. § 1133, 29 C.F.R. § 2560.503-1(g) and 26 U.S.C. § 9812(4).

51.    Furthermore, on or about October 3, 2019 Defendants sent letters (the "October Letters") to certain hospitals with which Plaintiff contracts to perform the Services that contained false information about Plaintiff's billing practices.

52.    Defendants falsely told certain hospitals in the October Letters that Plaintiff improperly was separately billing Anthem and Anthem members for the Services despite the hospital already having paid for this service through Anthem's fixed payment rate to the hospital.

53.    Defendants represented to the hospitals that as a result of Plaintiff's billing practices Anthem has made duplicative reimbursement payments to Plaintiff and the hospitals for "services relating to the mother's admission" amounting to "millions of dollars", threatened to hold the hospitals responsible for Anthem's losses if Plaintiff did not return the funds, and directed the hospitals to provide written confirmation that they would instruct Plaintiff to cease billing Anthem and its member/patients.

54.    Defendants also misrepresented to the hospitals that Plaintiff was engaged in "balance billing" of Anthem members, and that as a result of this practice numerous grievances from members have been filed with Anthem along with regulatory inquiries.

55.    Plaintiff alleges that the statements Defendants made in the October Letters were false and misleading made to disrupt Plaintiff's business and contracts with the hospital.

56.    Plaintiff contends that Defendants' obligation is to reimburse the provider of the services performed, in this case Plaintiff, not the hospital.

**57.**     Plaintiff contends that it does not bill for services to the mother as misstated by Defendants in the October Letters, instead billing only for hearing screenings to the newborn infants.

**58.**     Plaintiff contends it has not balance billed Anthem members, beneficiaries, or insureds as Defendants falsely represent in the October Letters. Rather Plaintiff submits timely and appropriate claims directly to Anthem for the services Plaintiff provides to Anthem's members, beneficiaries and/or insureds. Only after receipt of an EOB from Defendants setting forth patient responsibility, does Plaintiff send an account statement reflecting a balance due to the patient, which is based upon Defendants' determination of that patient's responsibility.

## FIRST CLAIM FOR RELIEF

### (Claims for Benefits Pursuant to 29 U.S.C. § 1132(a)(1)(B)

### Against All Defendants)

**59.**     Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though set forth herein.

**60.**     This claim is alleged by Plaintiff for relief in connection with claims for treatment rendered to members of an ERISA Plan. This claim seeks to recover benefits, enforce rights and clarify rights to benefits under 29 U.S.C. § 1132(a)(1)(B). Plaintiff has standing to pursue these claims as assignee of the Patients' benefits under the ERISA Plans. As the assignee of benefits under the ERISA Plans, Plaintiff is a "beneficiary" entitled to collect benefits under the terms of the ERISA Plans, and is the "claimant" for purposes of ERISA.

**61.**     Plaintiff is informed and believes, and based thereon alleges, that Defendants are the insurer, sponsor, and/or financially responsible payer, serves as its designated plan administrator, and/or services as the named plan administrator's designee.  Plaintiff is further informed and believes, and based thereon alleges, that with respect to each of the ERISA Plans at issue in this case that are self-insured plans, but which do not specifically designate a plan

administrator, Anthem effectively controls the decision whether to honor or deny the a claim under the Plan, exercises authority over the resolution of benefits claims, and/or has responsibility to pay the claims.  Anthem also plays the role as the *de facto* plan administrator for such Plans.

**62.**      Plaintiff is informed and believes, and based thereon alleges, that for each of these claims and for each of the involved Patients, Defendants have failed and refused to pay, process or adjust these claims in an appropriate fashion by, among other acts and omissions:

      **a.**      Delaying the processing, adjustment and/or payment of claims for periods of time greater than 45 days after submission of the claims in violation of 29 C.F.R. § 2560.503-1(f)(2)(iii)(B);

      **b.**      Failing and refusing to provide any notice and/or explanation for the denial of benefits, payments or reimbursement of the claims of each of the Patients, in violation of 29 U.S.C. § 1133(1);

      **c.**      Failing and refusing to provide an adequate notice and/or explanation for the denial of benefits, payments or reimbursement of claims of each of the Patients, in violation of 29 U.S.C. § 1133(1);

      **d.**      Failing and refusing to provide an explanation for the denial of benefits, payments or reimbursements of claims of each of the Patients, and by failing and refusing to set forth the specific reasons for such denials, all in violation of 29 U.S.C. § 1133(1);

      **e.**      Failing and refusing to provide an explanation for the denial of benefits, payments or reimbursements of claims of each of

the Patients, written in a manner calculated to be understood by the participant, in violation of 29 U.S.C. § 1133(1);

**f.**    Failing to afford Plaintiff and/or its Patients with a reasonable opportunity to engage in an appeals process, in violation of 29 U.S.C. § 1133(2);

**g.**    Failing to afford Plaintiff and/or its Patients with a reasonable opportunity to engage in meaningful appeal process which was full and fair, in violation of 29 U.S.C. § 1133(2);

**h.**    Failing and refusing to provide Plaintiff and/or its Patients with information pertaining to their rights to appeal, including not limited to those deadlines for filing appeals and/or the requirements that an appeal be filed, in violation of 29 U.S.C. § 1133(1);

**i.**    Violating the minimum requirements for employee benefit plans pertaining to claims and benefits by participants and beneficiaries, in violation of 29 C.F.R. § 2560.503-1(a), *et seq.*;

**j.**    Failing and refusing to establish and maintain reasonable claims procedures in violation of 29 C.F.R. § 2560.503-1(b);

**k.**    Establishing, maintaining and enforcing claims procedures which unduly inhibit the initiation and processing of claims for benefits, in violation of 29 C.F.R. § 2560.503.1(b)(3);

**l.**    Precluding and prohibiting Plaintiff from acting as an authorized representative of the Patients in pursuing a benefit claim or appeal of an adverse benefit determination, in violation of 29 C.F.R. § 2560.503-1(b)(4);

**m.**    Failing and refusing to design, administer and enforce their processes, procedures and claims administration to ensure

that their governing plan documents and provisions have been applied consistently with respect to similarly situated participants, beneficiaries and claimants, in violation of 29 C.F.R. § 2560.503-1(b)(5); and

**n.** Failing and refusing to pay benefits for services rendered by Plaintiff which Anthem authorized, as well as rescinding the same, in violation of California Health & Safety Code § 1371.8 and California Insurance Code § 796.04.

**63.** The failure and refusal of Defendants to provide coverage, reimbursement, payment and/or benefits for the Services rendered by Plaintiff to the Patients who were covered by Defendants and Defendants' denial of health insurance benefits coverage constitutes a breach of the insurance plans and/or employee benefit Plans between Defendants and the Patients. Plaintiff seeks reimbursement and compensation for any and all payments which it would have received and to which it will be entitled as a result of Defendants' failure to pay benefits and cover those the Services rendered by Plaintiff to the Patients, in an amount not less than $5.9 million, according to proof at trial.

**64.** Defendants have arbitrarily and capriciously breached the obligations set forth in the Plans issued by Defendants, and Defendants have arbitrarily and capriciously breached their obligations under the ERISA Plans to provide Plaintiff and the Patients with health benefits.

**65.** As a direct and proximate result of the actions by Defendants, Plaintiff has been damaged in an amount equal to the amount of benefits Plaintiff should have received and to which the Patients would have been entitled had Defendants paid the proper amounts, which Plaintiff estimates to be no less than $5.9 million.

**66.** As a direct and proximate result of the aforesaid conduct of Defendants in failing to provide coverage as required, Plaintiff has suffered, and will continue to suffer in the future, damages, plus interest and other economic

and consequential damages, for a total amount Plaintiff estimates to be no less than $5.9 million, or as otherwise determined at the time of trial.

67.     Plaintiff is entitled to an award of reasonable attorneys' fees pursuant to 29 U.S.C. § 1132(g)(1).  As a result of the actions and failings of the Defendants, Plaintiff has retained the services of legal counsel and has necessarily incurred attorneys' fees and costs in prosecuting this action.  Furthermore, Plaintiff anticipates incurring additional attorneys' fees and costs hereafter pursing this action.

## SECOND CLAIM FOR RELIEF

## (Breach of Contract (Third Party Beneficiary) Against All Defendants)

68.     Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though set forth herein.

69.     Plaintiff is informed, and based thereon alleges, that the Plans were executed by the Patients and the Defendants, in substantial part, for the direct benefit of health care providers such as Plaintiff.  Plaintiff, at all relevant times provider of the Services, was an intended third party beneficiary for payment of the Services provided to the Patients under their respective Plans.

70.     Plaintiff further informs and believes, and based thereon alleges, that Plaintiff is an assignee and intended beneficiary of its Patients' Plans issued by Defendants and the rights conferred thereunder.

71.     Plaintiff is entitled to be paid for the services rendered based on the existence and terms of the insurance policies covering each Patient.

72.     Plaintiff confirmed that each Patient referenced herein was covered by a policy issued by Defendants.  At great expense, Plaintiff provided the Services to the Patients.

73.     After providing the Services, Plaintiff submitted appropriate claim forms to Defendants, or their agents, requesting compensation for the care and treatment provided to the Patients.

**74.**     Plaintiff either did not receive full, reasonable, and often no compensation for the services provided.

**75.**     Plaintiff is informed and believes, and based thereon alleges, there is no legally operative term in the Plans that permit Defendants to deny Plaintiff full and/or reasonable compensation for the services Plaintiff provided to the Patients in good faith.  Plaintiff duly performed under the insurance contract and must be paid by Defendants.

**76.**     Plaintiff is informed and believes, and based thereon alleges, that the Patients, and each of them, have performed all of the obligations required of them under their respective Plans with Defendants, except as otherwise may have been excused or prevented by Defendants.

**77.**     There is now due, owing and unpaid by Defendants to Plaintiff a sum not less than $5.9 million, plus pre-judgment interest, according to proof.

## THIRD CLAIM FOR RELIEF

### (Breach of Contract (Assignment) Against All Defendants)

**78.**     Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though set forth herein.

**79.**     The Plans obligated Defendants to reimburse and/or pay for the Patient's medical care pursuant to the Plans, as applicable.  When the Patients obtained the Services from Plaintiff, they assigned to in writing (in the form in paragraph 24 of the Complaint) their rights to any reimbursement and/or payment from Defendants for treatment.

**80.**     Pursuant to these assignments, Plaintiff was entitled to payment from Defendants for the Services rendered based on the existence and terms of the insurance policies covering each Plaintiff, at the rates set forth in the Plans. Despite written demand from Plaintiff, Defendants have failed and refused to pay such amounts.

**81.**     At great expense, Plaintiff thereafter provided the Services.

**82.**     After providing the Services, Plaintiff submitted appropriate claim forms to Defendants, or their agents, requesting compensation for the care and treatment provided to the Patients.

**83.**     Plaintiff did not receive full, reasonable, and often no compensation for the Services Plaintiff provided.

**84.**     Plaintiff is informed and believes, and based thereon alleges, there is no legally operative term in the Plans that permit Defendants to deny Plaintiff full and/or reasonable compensation for the Services Plaintiff provided to the Patients.  Plaintiff duly performed under the insurance contract and must be paid by Defendants.

**85.**     Plaintiff is informed and believes, and based thereon alleges, that the Patients, and each of them, have performed all of the obligations required of them under their respective Plans with Defendants, except as otherwise may have been excused or prevented by Defendants.

**86.**     There is now due, owing and unpaid by Defendants to Plaintiff a sum not less than $5.9 million, plus pre-judgment interest according to proof.

<u>**FOURTH CLAIM FOR RELIEF**</u>

**(Open Book Account Against All Defendants)**

**87.**     Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though set forth herein.

**88.**     Within the last four years Defendants became indebted to Plaintiff on an open book account in a sum not less than $5.9 million, plus daily interest through the entry of judgment.

**89.**     Plaintiff demanded payment from Defendants and Defendants have refused and continue to refuse to pay.  There is now due, owing and unpaid an open book account in the sum not less than $5.9 million, plus daily pre-judgment interest until the entry of judgment.

## FIFTH CLAIM FOR RELIEF

### (Promissory Estoppel Against All Defendants)

**90.**    Plaintiff realleges and incorporates by reference each and every
paragraph of this Complaint as though set forth herein.

**91.**    Plaintiff relied on Defendants' promises in providing the Services
Defendants' insureds, and defendants, and each of them, should reasonably have
expected to induce Plaintiff's action in providing treatment.

**92.**    Plaintiff has suffered substantial detriment in reliance upon
Defendants' promises in providing the Services to Defendants' insureds, including
without limitation the benefits owed in the amount of at least $5.9 million, the
interruption in Plaintiff's business, lost business opportunities, lost profits and
other consequences, all according to proof.

**93.**    As a direct and proximate result of Defendants' breach of their
promise, Plaintiff has sustained general and incidental damages, and statutory and
prejudgment interest, in excess of the jurisdictional minimum of this court in an
amount to be determined at trial. Under this claim for relief, and aside from the
consequential damages set forth above, Plaintiff seeks to recover its fully-billed
charges.

## SIXTH CLAIM FOR RELIEF

### (*Quantum Meruit* Against All Defendants)

**94.**    Plaintiff realleges and incorporates by reference each and every
paragraph of this Complaint as though set forth herein.

**95.**    Plaintiff, as an out-of-network provider, provided the Services  to the
Patients who were insured under Anthem Plans, preceded by authorization and
verification of benefits by Defendants.

**96.**    Consistent with the trade custom, Plaintiff provided the subject
treatment with the expectation, which was fully and clearly understood by

Defendants and each of them, that Plaintiff would be compensated for the Services.

97.   In addition to reliance upon the trade custom, Plaintiff provided the Services with the expectation that Plaintiff would be compensated for such services based upon the prior course of conduct between Plaintiff and defendants.

98.   Defendants and each of them were fully aware of the dollar amounts charged by Plaintiff for the Services. Defendants, and each of them, were also aware that Plaintiff did not provide the subject treatment for free, and that Plaintiff would submit its total billed charges for the Services and expect to be compensated.

99.   Defendants and each of them also knew Plaintiff was not an in-network provider who had agreed to accept any pre-negotiated contract rates.

100.   Whereas payment by Defendants, and each of them, was either sporadic, inadequate, or nothing, and at some point in time Defendants ceased reimbursing out-of-network providers, including Plaintiff, for any treatment rendered, including the Services.

101.   Defendants and each of them were at all times obligated under Federal law and California law to provide or arrange for the provision of access for their insureds to certain health care services in a timely manner, including the Services, and sought to satisfy this duty by providing a network of in-network providers for their insureds to choose from so they may receive the necessary treatment at the lowest expense to the insurer and the insured.

102.   Defendants are also liable to pay Plaintiff for treating the Patients and claims at issue due to a contract implied in law based on the network gap concept as discussed hereinabove. California law requires that where health insurance carriers such as Defendants cannot provide their insureds access to the needed healthcare providers on an "in-network" basis, the carriers shall pay any "out-of-network" provider such as Plaintiff the amounts necessary to limit the out-of-

pocket cost to the Patient as if an in-networker provider had provided the same treatment and services. In effect, this makes an out-of-network provider eligible to receive up to 100 percent of its fully-billed charges (since the Patients would be responsible for only their relatively nominal co-payments), or in any case substantially more than the contracted rates agreed to by an in-network provider.

103.    Plaintiff is informed, and based therein alleges, that, there was a network gap with respect to the Patients' payments which are at issue in this action, since Defendants failed to arrange for any in-network providers in the Patients' localities who conducts the Services. Indeed, if Defendants objected to their insureds obtaining treatment from an out-of-network provider such as Plaintiff, why did they refuse or otherwise fail to refer those Patients to an in-network provider. The only reasonable inference is that there were no such in-network providers who were in the position to treat the Patients at issue. As a result, those Patients had no choice but to seek the services and treatments rendered by Plaintiff, who did so in good faith and in reliance on Defendants' expected compliance with the applicable California healthcare as it pertains to a "network gap."

104.    Defendants and each of them, by words and conduct, requested that Plaintiff provide the Services to their insureds, which benefitted Defendants in terms of meeting their legal and contractual obligations to provide or arrange for the provision of access to health care services in a timely manner.

105.    As part of verifying benefits and authorizing treatment when necessary, Defendants, and each of them, knew that Plaintiff was providing the Services to Defendants' insureds, and promised to pay Plaintiff for the treatment.

106.    Defendants sold each Patients' Plan and accepted the premium payments, and permitted their insureds to seek the Services, confirmed to Plaintiff that the subject Patients were indeed covered by Defendants, and then, on unspecified, specious and/or unlawful grounds, have since refused to fully compensate Plaintiff for the services rendered to, and benefitted by, the Patients.

Defendants were, and are, enriched by keeping the insurance premiums for such Plans without having to pay for the Services they promised to cover in their Plans.

**107.** Plaintiff is entitled to be paid its usual and customary fees for the Services, without regard to the payment provisions in Defendants' policies and/or the payments owing to Plaintiff under California law based on the existence of a "network gap" as to some or all of the Patients at issue.

**108.** The fair and reasonable value of the non-reimbursed Services that Plaintiff provided to the Patients is at least $5.9 million.

**109.** Defendants and each of them, however, have failed and refused, and continue to refuse, to reimburse Plaintiff for the reasonable and customary value of Plaintiff's Services as required by law.

**110.** As a direct and proximate result of Defendants' failure to pay for the Services rendered, Plaintiff has suffered general and incidental damages according to proof, and is entitled to statutory and pre-judgment interest.

**111.** As a direct and proximate result of Defendants' failure to pay for the Services rendered, Plaintiff has incurred and continues to incur economic loss, including the benefits owed in the amount of at least $5.9 million, the interruption in Plaintiff's business, lost business opportunities, lost profits and other consequences, all according to proof.

**112.** As a direct and proximate result of Defendants' failure to pay for services rendered, Plaintiff has sustained damages, and statutory and prejudgment interest, in excess of the jurisdictional minimum of this court in an amount to be determined at trial.

## SEVENTH CLAIM FOR RELIEF

### (Unfair Competition Against All Defendants)

**113.** Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though set forth herein.

114.    Defendants have engaged in unfair and/or unlawful business practices by, inter alia:

    **a.**    Failing to comply with applicable Federal and California law, including 42 U.S.C. § 18022(b)(1)(E), 42 U.S.C. § 300gg-26 29 C.F.R. § 2590.712 and California Health & Safety Code §§ 1367.005, 1367.015 by knowingly, among other things, engaging in an "unfair payment pattern" (e.g., delaying payment of claims, reducing the amount of payment and/or denying payment of claims, failing on a repeated basis to pay uncontested portions of claims in a timely manner;

    **b.**    Failing to comply with 42 U.S.C. § 300gg-9, California Insurance Code § 10117.52, which require disclosure to patients of pertinent facts or insurance policy provisions relating to any coverage issues;

    **c.**    Disseminating false and misleading information.

115.    This conduct by Defendants constitute illegal and unfair business practices under California Business and Professions Code § 17200, *et seq.*

116.    Plaintiff seeks restitution in an amount according to proof at trial, plus applicable statutory interest. Plaintiff also seeks an injunction prohibiting Defendants from continuing with these practices as set forth in this fifth claim for relief.

## **EIGHTH CLAIM FOR RELIEF**

**(Intentional Interference with Contractual Relations Against All Defendants)**

117.    Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though set forth herein.

118.    Plaintiff's business is reliant on its relationships with hospitals that are in need of Services from Plaintiff. Defendants knew and know that Plaintiff contracts with hospitals for its Services.

119.    By sending the October Letters to Plaintiff's hospital clients

containing false statements about Plaintiff's billing practices, threatening to hold the hospitals responsible for Anthem's losses if Plaintiff did not return the funds, and directing the hospitals to provide written confirmation that they would instruct Plaintiff to cease to bill Anthem and its member/patients, Defendants have interfered with Plaintiff's contracts with the hospitals .

120.   The conduct of Defendants as described above was designed to disrupt the contractual relationships between Plaintiff and its clients, and indeed, some of the relationships have been disrupted as a result of Defendants' interference by disseminating false and/or misleading information contained within the October Letters.

121.   Defendants' interference with Plaintiff's relationships constituted an unfair business practice in violation of Business and Professions Code section 17200 as alleged above.

122.   As a direct and proximate result of Defendants' conduct, Plaintiff suffered damages in an amount to be proven at trial.

123.   The conduct of Defendants in interfering with Plaintiff's contractual relationships was intentional, willful, and calculated to cause damage to Plaintiff's lawful business.  The conduct of Defendants was perpetrated with actual malice and ill will toward Plaintiff, and with the intentional and improper purpose of causing damage. There was no justifiable cause for Defendants' actions.  As a result, an award of punitive damages is warranted.

## NINTH CLAIM FOR RELIEF

### (Negligent Interference with Contractual Relations Against All Defendants)

124.   Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though set forth herein.

125.   Plaintiff's business is reliant on its relationships with hospitals that are in need of Services from Plaintiff. Defendants knew and know that Plaintiff contracts with hospitals for its Services.

126.   By sending the October Letters to Plaintiff's hospital clients containing false statements about Plaintiff's billing practices, threatening to hold the hospitals responsible for Anthem's losses if Plaintiff did not return the funds, and directing the hospitals to provide written confirmation that they would instruct Plaintiff to cease to bill Anthem and its member/patients, Defendants have interfered with Plaintiff's contracts with the hospitals .

127.   Due to the conduct of Defendants as described above the contractual relationships between Plaintiff and some of its clients have been disrupted as a result of Defendants' interference by disseminating false and/or misleading information contained within the October Letters.

128.   Defendants' interference with Plaintiff's relationships constituted an unfair business practice in violation of Business and Professions Code section 17200 as alleged above.

129.   As a direct and proximate result of Defendants' conduct, Plaintiff suffered damages in an amount to be proven at trial.

## TENTH CLAIM FOR RELIEF

### (Intentional Interference with Prospective Economic Advantage Against All Defendants)

130.   Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though set forth herein.

131.   Plaintiff's business is reliant on its relationships with hospitals that are in need of Services from Plaintiff. Defendants knew and know that Plaintiff has and seeks prospective economic relationships with hospitals for its Services.

132.   By sending the October Letters to Plaintiff's hospital clients containing false statements about Plaintiff's billing practices, threatening to hold the hospitals responsible for Anthem's losses if Plaintiff did not return the funds, and directing the hospitals to provide written confirmation that they would instruct

Plaintiff to cease to bill Anthem and its member/patients, Defendants have interfered with Plaintiff's prospective economic relationships with the hospitals.

133.    The conduct of Defendants as described above was designed to disrupt the prospective economic relationships between Plaintiff and its clients, and indeed, some of the prospective economic relationships have been disrupted as a result of Defendants' interference by disseminating false and/or misleading information contained within the October Letters.

134.    Defendants' interference with Plaintiff's prospective economic relationships constituted an unfair business practice in violation of Business and Professions Code section 17200 as alleged above.

135.    As a direct and proximate result of Defendants' conduct, Plaintiff suffered damages in an amount to be proven at trial.

136.    The conduct of Defendants in interfering with Plaintiff's prospective Economic relationships was intentional, willful, and calculated to cause damage to Plaintiff's lawful business.  The conduct of Defendants was perpetrated with actual malice and ill will toward Plaintiff, and with the intentional and improper purpose of causing damage. There was no justifiable cause for Defendants' actions.  As a result, an award of punitive damages is warranted.

## ELEVENTH CLAIM FOR RELIEF

### (Negligent Interference with Prospective Economic Advantage
### Against All Defendants)

137.    Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though set forth herein.

138.    Plaintiff's business is reliant on its relationships with hospitals that are in need of Services from Plaintiff. Defendants knew and know that Plaintiff has and seeks prospective economic relationships with hospitals for its Services.

139.    By sending the October Letters to Plaintiff's hospital clients

containing false statements about Plaintiff's billing practices, threatening to hold the hospitals responsible for Anthem's losses if Plaintiff did not return the funds, and directing the hospitals to provide written confirmation that they would instruct Plaintiff to cease to bill Anthem and its member/patients, Defendants have interfered with Plaintiff's prospective economic relationships with the hospitals.

140.   Due to the conduct of Defendants as described above the prospective economic relationships between Plaintiff and some of its clients, have been disrupted as a result of Defendants' interference by disseminating false and/or misleading information contained within the October Letters.

141.   Defendants' interference with Plaintiff's prospective economic relationships constituted an unfair business practice in violation of Business and Professions Code section 17200 as alleged above.

142.   As a direct and proximate result of Defendants' conduct, Plaintiff suffered damages in an amount to be proven at trial.

## TWELFTH CLAIM FOR RELIEF

## (Civil Racketeer Influenced and Corrupt Organizations Act ("RICO") Against All Defendants)

143.   Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though set forth herein.

144.   Plaintiff is informed and believes, and based thereon alleges, that Defendants are corporations with a corporate framework for making decisions.

145.   Plaintiff is further informed and believes, and based thereon alleges ,that Defendants function as a continuing unit, and as such, Defendants each have an ascertainable corporate structure of system of authority guiding its operations.

146.   Plaintiff is further informed and believes, and based thereon alleges, that Defendants provided the Patients with the Plans in exchange for insurance premium payments from the Defendants.

147.   Plaintiff is further informed and believes, and based thereon alleges, Defendants engaged in biased business practices as set forth in this Complaint, the actions of which amounted to fraud.

148.   Plaintiff is further informed and believes, and based therein alleges, that Defendants committed mail and/or wire fraud when it carried out the biased business practices set forth in this Complaint by mail and/or wire.

149.   Defendants falsely told the hospitals in the October Letters that Plaintiff improperly was separately billing Anthem and Anthem members for the infant hearing tests despite the hospital has already been paid for this service through Anthem's fixed payment rate to the hospital.

150.   Defendants misrepresented to the hospitals that as a result of Plaintiff's billing practices Anthem has made duplicative reimbursement payments to Plaintiff and the hospitals for "services relating to the mother's admission" amounting to "millions of dollars", threatened to hold the hospitals responsible for Anthem's losses if Plaintiff did not return the funds, and directed the hospitals to provide written confirmation that they would instruct Plaintiff to cease to bill Anthem and its member/patients.

151.   Defendants also misrepresented to the hospitals that Plaintiff was engaged in "balance billing" of Anthem members, and that as a result of this practice numerous grievances have been filed by Anthem members with Anthem along with regulatory inquiries.

152.   Plaintiff alleges that the statements Defendants made in the October Letters and described in this Complaint are a form of fraud that was designed to increase the financial profitability of Defendants at the expense of entities such as Plaintiff by allowing Defendants to collect premium payments from the Patients and make a return on these payments while preserving the opportunity to deny Plaintiff's claims.

1    **153.**    As a result of Defendants' violations under RICO, Plaintiff is entitled
2  to recover threefold the damages it sustained, and the cost of suit, including
3  reasonable attorney's fees.

4                          **PRAYER FOR RELIEF**

5  **AS TO THE FIRST CLAIM FOR RELIEF**:

6      WHEREFORE, Plaintiff prays as follows:

7    **1.**    For an order that Defendants pay to Plaintiff an amount to be
8           determined at trial for the Claims under the ERISA Plans;

9    **2.**    For economic damages according to proof;

10   **3.**    For attorney's fees and costs of suit incurred herein pursuant to ERISA
11          § 502(g), 29 U.S.C. § 1132(g);

12   **4.**    For pre- and post-judgment interest as allowed by law; and

13   **5.**    For such other and further relief as the Court deems appropriate.

14 **AS TO THE SECOND, THIRD, FOURTH, FIFTH, SIXTH AND**
15 **SEVENTH CLAIMS FOR RELIEF:**

16     WHEREFORE, Plaintiff prays as follows:

17   **1.**    For an order that Defendants pay to Plaintiff an amount to be proven at
18          trial;

19   **2.**    For economic damages according to proof;

20   **3.**    For pre- and post-judgment interest as allowed by law;

21   **4.**    Restitution of profits unlawfully obtained by Defendants through unfair
22          competition and other wrongful acts;

23   **5.**    For attorney's fees and costs of suit incurred herein; and

24   **6.**    For such other and further relief as the Court deems appropriate.

25 //
26 //
27 //
28 //

**AS TO THE EIGHTH AND TENTH CLAIMS FOR RELIEF:**

WHEREFORE, Plaintiff prays as follows:

1. For an order that Defendants pay to Plaintiff an amount to be proven at trial;

2. For economic damages according to proof;

3. For punitive damages as allowed by law;

4. For pre- and post-judgment interest as allowed by law;

5. For attorney's fees and costs of suit incurred herein as allowed by law; and

6. For such other and further relief as the Court deems appropriate.

**AS TO THE NINTH AND ELEVENTH CLAIMS FOR RELIEF:**

WHEREFORE, Plaintiff prays as follows:

1. For an order that Defendants pay to Plaintiff an amount to be proven at trial;

2. For economic damages according to proof;

3. For pre- and post-judgment interest as allowed by law;

4. For attorney's fees and costs of suit incurred herein as allowed by law; and

5. For such other and further relief as the Court deems appropriate.

/

//
//
//
//

**AS TO THE TWELFTH CLAIM FOR RELIEF:**

WHEREFORE, Plaintiff prays as follows:

1.    For an order that Defendants pay to Plaintiff an amount to be proven at trial;

2.    For economic damages according to proof;

3.    For treble damages as allowed by law;

4.    For pre- and post-judgment interest as allowed by law;

5.    For attorney's fees and costs of suit incurred herein as allowed by law; and

6.    For such other and further relief as the Court deems appropriate.


Respectfully Submitted,

Dated: February 26, 2020          GARNER HEALTH LAW CORPORATION


By: */s/ Craig B. Garner*
          CRAIG B. GARNER
Attorneys for PLAINTIFF HALO
UNLIMITED, INC.

# **DEMAND FOR JURY TRIAL**

Pursuant to the Seventh Amendment to the United States Constitution, and any other applicable law, Plaintiff hereby requests a trial by jury for all claims triable by jury.

Respectfully Submitted,

Dated: February 26, 2020           GARNER HEALTH LAW CORPORATION

By: */s/ Craig B. Garner*
        CRAIG B. GARNER
Attorneys for PLAINTIFF HALO
UNLIMITED, INC.