GARNER HEALTH LAW CORPORATION
CRAIG B. GARNER (CA SBN 177971)
craig@garnerhealth.com
475 Washington Blvd.
Marina Del Rey, CA 90292
Telephone: (310) 458-1561
Facsimile: (310) 694-9025

Attorneys for PLAINTIFF HALO UNLIMITED, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| HALO UNLIMITED, INC *et al.*,<br><br>Plaintiff,<br><br>v.<br><br>ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY, *et al.*,<br><br>Defendants. | Case No. 8:20-cv-00399-JAK (KESx)<br><br>**SECOND AMENDED COMPLAINT FOR:**<br><br>1. BREACH OF EMPLOYEE WELFARE BENEFIT PLAN (RECOVERY OF PLAN BENEFITS UNDER E.R.I.S.A.) 29 U.S.C. § 1132(a)(1)(b)<br>2. BREACH OF CONTRACT (THIRD PARTY BENEFICIARY)<br>3. BREACH OF CONTRACT (ASSIGNMENT)<br>4. OPEN BOOK ACCOUNT<br>5. *QUANTUM MERUIT*<br>6. PROMISSORY ESTOPPEL<br>7. DEFAMATION<br>8. INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS<br>9. INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE<br>10. NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE<br><br>DEMAND FOR JURY TRIAL |

In response to the April 18, 2024 Order of this Court[ Dkt. 156], PLAINTIFF HALO UNLIMITED, INC., a Nevada corporation, doing business as Infant Hearing Screening Specialists ("Plaintiff"), complains and alleges in this Second Amended Complaint (the "Complaint") against ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY, a California corporation ("Anthem Blue Cross"), BLUE CROSS OF CALIFORNIA, California corporation ("Blue Cross"), ANTHEM, INC., an Indiana corporation doing business as ANTHEM HEALTH, INC. ("Anthem Health", collectively with Anthem Blue Cross and Blue Cross referred to hereinafter as "Anthem") and Does 1 through 10 (the "Doe Defendants", collectively with Anthem referred to hereinafter as "Defendants") as follows:

## THE PARTIES

1.      Plaintiff is a corporation organized and existing under the laws of the State of Nevada, with its primary place of business located in Corona, California.

2.      Defendant Anthem Blue Cross is and at all relevant times was a corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits.  Plaintiff is informed and believes, and based thereon alleges, that Anthem Blue Cross is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact the business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

3.      Defendant Blue Cross is and at all relevant times was a California corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits.  Plaintiff is informed and believes, and based thereon alleges, that at all relevant times was licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact the business of insurance in the State of California, was in

fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

4. Defendant Anthem Health is and at all relevant times was an Indiana corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits. Plaintiff is informed and believes, and based thereon alleges, that Anthem Health at all relevant times was licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact the business of insurance in the State of California, was in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

5. The true names and capacities of the Doe Defendants are unknown to Plaintiff at this time, and Plaintiff therefore sues such defendants by such fictitious names. Plaintiff is informed and believes, and based thereon alleges, that the Doe Defendants are those individuals, corporations and/or other business entities that are also in some fashion legally responsible for the actions, events and circumstances complained of herein, and may be financially responsible to Plaintiff for the services Plaintiff has provided as alleged in this Complaint. This Complaint will be amended to allege the Doe Defendants' true names and capacities when they have been ascertained.

6. At all relevant times herein, unless otherwise indicated, Defendants were the agents and/or employees of each of the remaining Defendants and were at all times acting within the purpose and scope of said agency and employment, and each of the Defendants has ratified and approved the acts of the agent. At all relevant times herein, Defendants had actual or ostensible authority to act on each other's behalf in certifying or authorizing the provision of services, processing and administering the claims and appeals, pricing the claims, approving or denying the claims, directing each other as to whether and/or how to pay claims, issuing

remittance advices and explanation of benefits ("EOB") statements, and making payments to Plaintiff and/or the Patients.

## **STANDING**

7.     The text of the Employee Retirement Income Security Act of 1974 ("**ERISA**") authorizes a "participant or beneficiary" of an ERISA plan to bring a civil action.  The law of the Ninth Circuit holds that health care providers are not "beneficiaries" within the meaning of ERISA.  *See DB Healthcare, LLC,* 852 F.3d at 874.  Therefore, "a non-participant health care provider . . . cannot bring claims for benefits on its own behalf.  It must do so derivatively, relying on its patients' assignments of their benefits claims." *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1289 (9th Cir. 2014).

8.     It is well-established in the Ninth Circuit that assignees are generally allowed to bring suit on behalf of the assignor.  *See Spring Commc'ns Co., L.P. v. APCC Servs.,* 554 U.S. 269, 275 (2008) ("[H]istory and precedent are clear on the question before us: Assignees of a claim, including assignees for collection, have long been permitted to bring suit,"  This general principle extends into the ERISA context. *See Misic v. Bldg. Serv. Emps. Health & Welfare Tr.*, 789 F.2d 1374, 1378 (9th Cir. 1986); *Spinedex,* 770 F.3d at 1288.

9.     California law is clear that the assignment of claims "is a good rule – which is why the courts have crafted it over the years even though it appears to contradict the clear text of many insurance policies and the courts' expressed fidelity to contract language." *Fluor Corp. v. Superior Ct.*, 61 Cal. 4th 1175, 1218-19 (2015).  California Insurance Code Section 520 states "[a]n agreement not to transfer the claim of the insured against the insurer after a loss has happened, is void if made before the loss except as otherwise provided." *See also Yazdi v. Aetna Life & Casualty (Bermuda) Ltd.*, 2019 WL 6720989 at * 4 (C.D. Cal., Jan. 2, 2019) ("California Insurance Code § 520 protects an insured's ability to assign rights under an insurance policy after the loss has occurred.").

**10.** At all relevant times herein, unless otherwise indicated, the Defendants were the agents and/or employees of each other and were at all times acting within the purpose and scope of said agency and employment, and each of the Defendants has ratified and approved the acts of the agent. At all relevant times herein, each of the Defendants had actual or ostensible authority to act on each other's behalf in certifying or authorizing the provision of services, processing and administering the claims and appeals, pricing the claims, approving or denying the claims, directing each other as to whether and/or how to pay claims, issuing remittance advices and EOB statements, and making payments to Plaintiff and/or other providers and/or patients.

## JURISDICTION AND VENUE

**11.** Plaintiff brings this action for monetary relief pursuant to Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(1)(B). This Court has subject matter jurisdiction over Plaintiff's claims because the action seeks to enforce rights under ERISA pursuant to §§ 502(e) and (f), 29 U.S.C. §§ 1132(e) and (f), and 28 U.S.C. § 1331.

**12.** This Court also has pendant jurisdiction over the non-ERISA, state law claims as such claims arose from a common nucleus of facts. *Nishimoto v. Federman Bachrach & Assoc.*, 903 F.2d 709 (9th Cir. 1990). Likewise, this Court has the authority to maintain pendent jurisdiction even after the federal claims upon which jurisdiction is based have been dismissed or rendered moot. *Herklotz v. Parkinson*, 848 F.3d 894, 897 (9th Cir. 2017); *Baker v. Farmers Elec. Co-op, Inc.*, 34 F.3d 274, 283 (5th Cir. 1994); *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 ("[W]hen a court grants a motion to dismiss for failure to state a federal claim, the court generally retains discretion to exercise supplemental jurisdiction . . . over pendent state-law claims.").

**13.** This Judicial District is the proper venue for this action pursuant to 8 U.S.C. § 1392(b), 29 U.S.C. § 1132(e)(2), 28 U.S.C. § 1391(c)(2) and 28 U.S.C. §

1392(d) because Anthem Blue Cross resides in this Judicial District and/or Defendants administer, in part, the applicable plans in this Judicial District, as well as a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this Judicial District.

## THE AFFORDABLE CARE ACT

14. The 2010 Patient Protection and Affordable Care Act (the "ACA" or "Affordable Care Act") required each health insurance issuer to accept every employer and individual in the state that applies for coverage, permitting annual and special open enrollment periods for those with qualifying lifetime events. 42 U.S.C. § 300gg-1. The ACA further prohibited any group health plan or insurer offering group or individual coverage from imposing any preexisting condition exclusion or discriminating against those who have been sick in the past. 42 U.S.C. § 300gg-3. The ACA also prohibits any group health plan or insurer offering group or individual coverage from setting eligibility rules based on health status, medical condition, claims experience, receipt of health care, medical history, genetic information, and evidence of insurability, including acts of domestic violence or disability. 42 U.S.C. § 300gg-4. These requirements under the ACA also apply to ERISA plans. 29 U.S.C. § 1182

15. The ACA also required health insurance plans, including those sold by Anthem, to provide ten categories of "essential health benefits," including but not limited to maternity and newborn care. 42 U.S.C. § 18022(b)(1)(D). In addition, under the ACA, states such as California established on-line health insurance exchanges (the "Exchanges") where entities such as Anthem had the ability to market new ACA-compliant plans. Plaintiff is informed and believes, and based thereon alleges, that Anthem marketed new plans that reimbursed out-of-network providers of maternity and newborn care treatment like Plaintiff.

## CALIFORNIA NEWBORN SCREENING PROGRAM

**16.** According to the California Department of Health Care Services ("DHCS"), the incidence of permanent significant hearing loss is approximately 2-4 per every 1,000 infants, and it is the most common congenital condition for which there is a screening program. California's newborn hearing screening program is estimated to identify approximately 1,000 infants with hearing loss each year. Infants who do not pass a hearing test are linked quickly and efficiently with appropriate diagnostic and treatment services, and with other intervention services, needed for the best possible outcome. According to the DHCS, infants with hearing loss, who have appropriate diagnosis, treatment and early intervention services initiated before six months of age, can develop normal language and communication skills.

**17.** At all relevant times herein, Plaintiff was a non-contracting (as to Anthem) provider of maternity and newborn care services, including but not limited to the provision of newborn hearing screening on infants during their hospital birth admission or while receiving care in the neo-intensive care unit and newborn nursery. As a non-contracting provider of the Services, Plaintiff is also referred to as a "non-contracted" or "out-of-network" provider. At all relevant times herein, Plaintiff provided a finite number of the Services to its patients, all of which are identified by the Current Procedural Terminology ("CPT") Codes (collectively the "Services"), including but not limited to the following

    **a.** 92586 (auditory evoked potentials for evoked response audiometry and/or testing of the central nervous system) (prior to January 1, 2021).

    **b.** 92650 (auditory evoked potentials; screening of auditory potential with broadband stimuli, automated analysis) (On and after January 1, 2021).

18.     Each of the CPT codes falls into the category of maternal and newborn care, which are "essential health benefit[s]" under the ACA.  42 U.S.C. § 18022(b)(1)(D).  To be a "qualified health plan" under the ACA, a health plan, in part, must provide the essential health benefits set forth in Section 18022. 42 U.S.C. § 18021(a)(1)(B).

19.     Each of the CPT codes requires the audiologist or physician to personally perform, interpret and report the procedures.  Moreover, Medicare guidelines allowed the outside provider to bill separately for CPT Code 92586.

20.     Section 80 of the Medicare Benefit Policy Manual, Chapter 15, specifically states:  Because the diagnostic test benefit . . . is separate and distinct from the incident to benefit . . . diagnostic tests need not meet the incident to requirements.  Diagnostic tests may be furnished under situations that meet the incident to requirements but this is not required.  *However, carriers must not scrutinize claims for diagnostic tests utilizing the incident to requirements.*" (emphasis added.).  CMS Manual System, Pub. 100-04 (Medicare Claims Processing), Transmittal 2044, number 6447.8 confirmed that such providers should be paid for the diagnostic audiological test, and references this specific section in the Medicare Benefit Policy Manual (rescinded in part only to correct number 6447.7.1).

21.     The California Newborn Screening ("NBS") Program is a public health program that screens all babies for many serious but treatable genetic disorders. Newborn screening began in California in 1966 with screening for one disorder, called phenylketonuria.  The NBS Program has expanded and now includes 80 different disorders, both genetic and congenital.  Newborn babies must be screened for all core disorders listed on the Recommended Uniform Screening Panel ("RUSC").

22.     While core conditions are the conditions that newborn screening is specifically designed to identify, other disorders can be detected from the

differential diagnosis of a core disorder, including but not limited to organic acid disorders, fatty acid oxidation disorders, amino acid disorders and hemoglobin disorders.

**23.** California Health & Safety Code Section 124116.5 states:

> (a)(1) Every general acute care hospital with licensed perinatal services in the state shall administer to every newborn, upon birth admission, a hearing screening test for the identification of hearing loss, using protocols approved by the department or its designee. [¶] (b) A hearing screening test provided for pursuant to subdivision (a) shall be performed by a licensed physician, licensed registered nurse, licensed audiologist, or an appropriately trained individual who is supervised in the performance of the test by a licensed health care professional.

**24.** California Code of Regulations Section 6501 states: "[E]ach newborn born in California shall be tested for galactosemia, hereditary hemoglobinopathies, phenylketonuria, primary congenital hypothyroidism and disorders authorized for testing in Health and Safety Codes 124977, 1224980 and 125001, in accordance with procedures in this Group." This mandate applies for health care providers employed by the hospital *as well as* outside providers for infants born at facilities without perinatal licensed practitioners.

**25.** Before January 1, 2021, Plaintiff performed the Services and submitted invoices to parties such as Defendants, using CPT Code 92586 (auditory evoked potentials for evoked response audiometry and/or testing of the central nervous system). Prior to the claims set forth in this Complaint, Defendants paid Plaintiff for the Services.

//

//

//

## PLAINTIFF'S STANDING TO PURSUE ITS CLAIMS
## UNDER THE ERISA PLANS

**26.** Plaintiff alleges that Anthem generally enters into private agreements with health care providers and facilities, including but not limited to acute care hospitals, extending to them "in network" provider status. Out-of-network claims are distinguished by the fact that when members/patients obtain health care services from an out-of-network provider, like Plaintiff, members/patients are responsible for charges that the plan might not cover, or that exceed Anthem's reimbursement obligation to members/patients under respective plans.

**27.** Plaintiff is informed and believes, and based thereon alleges, that this practice is known to Anthem and others in the industry as "steerage", which is a method by which facilities that maintain in-network status may refer patients to each other pursuant to in-network agreements. Plaintiff is further informed and believes, and based thereon alleges, that Anthem concludes that referrals to and amongst facilities within the in-network community are permitted without fear of reprisal by state regulatory commissions that prohibit patient referrals for a fee, and the in-network status also protects members/patients from incurring excessive facility charges that are often imposed when a patient uses an out-of-network facility.

**28.** Specifically for maternity care and newborn infants, each hospital where Plaintiff performs the Services enters into a written agreement obtaining the consent of the parents as well as assigning the benefits. As to the hospitals through which Plaintiff performed the Services on behalf of those patients insured by Anthem, the language from the Assignments includes, in part:

    **a.** "I authorize direct payment to the Hospital, Hospital-Based Physicians and other practitioners involved in my care and treatment of all insurance benefits payable to me or on my behalf for services

provided during this hospitalization, or for outpatient services or emergency services if applicable."

b.  "The undersigned assigns and hereby authorizes, whether he/she signs as agent or as patient, direct payment to any hospital-based physician of any insurance of health plan benefits otherwise payable to or on behalf of the patient for professional services rendered during this hospitalization or for outpatient services, including emergency services if rendered, at a rate not to exceed such physician's regular charges."

c.  "In exchange for, and in connection with, any and all of the services provided to me ("Services") by the hospital, whether I sign as patient or agent, I irrevocably assign to the hospital all of my rights , benefits, privileges, protections, claims and any other interests of any kind whatsoever, without limitation, including direct payment to the hospital for the Services, appeal rights, rights to fiduciary duties, rights to sue, rights to payment and rights to penalties or interest (collectively "Rights") that I had, have or may have in the future pursuant to, or in connection with, any insurance plan, health benefit plan, trust fund or other source of payment, insurance, indemnity or health or medical coverage of any kind (collectively "Health Coverage"), such that I am hereby transferring all and retaining none of these Rights under any Health Coverage to which I am now, previously or may be entitled to in the future.  To the same extent as authorized under this irrevocable assignment of Rights, I also authorize assignment to physician(s) for medical treatment and services rendered during my hospitalization of outpatient care."

**29.** Attached hereto and incorporated herein by this reference as Exhibit A are true and correct copies of 47 such examples of these assignments between the patients and the hospitals.

**30.** Prior to the January 1, 2021 change in the CPT Code, Plaintiff entered into written agreements with hospitals setting forth the ways in which Plaintiff billed for its services. With the exception of services provided to a Medi-Cal beneficiary, Plaintiff was "solely responsible for billing for the services rendered by [Plaintiff]. [Hospital] shall provide [Plaintiff] with patient insurance and billing information, and [Plaintiff] shall bill said insurers in compliance with applicable law." Attached hereto and incorporated herein by this reference as Exhibits B, C, D and E are true and correct copies of written agreements between Plaintiff and five separate hospitals.

**31.** Plaintiff provided and rendered at the hospitals the Services to members, subscribers and insured of Anthem hereinafter referred to collectively as the "Patients", each of whom received the Services from Plaintiff at the hospitals. As a result, Plaintiff became entitled to reimbursement, remuneration and/or payment from Anthem for the Services Plaintiff provided to the Patients.

**32.** Plaintiff is informed and believes, and based thereon alleges, that some or all of the Patients had express coverage for the Services as a delineated benefit of an ERISA plan, summary plan descriptions, and policies which were underwritten and/or administered by Anthem and/or the Doe Defendants (collectively an "ERISA Plan" or the "ERISA Plans").

**33.** Plaintiff is informed and believes, and based thereon alleges, that some or all of the Patients were plan participants and/or beneficiaries of an Employee Welfare Plan under ERISA, as those terms are defined by 20 U.S.C. § 1002. Plaintiff is further informed and believes, and based thereon alleges, that some or all of the Patients were entitled to be reimbursed for the cost of the Services as the benefit of the subject Anthem plans, policies and insurance agreements governing

the relationship between each Patient and Anthem (the "Anthem Plans", and collectively with the ERISA Plans the "Plans"). Each of the Plans provided coverage for both in and out-of-network providers like Plaintiff and for treatment by providers of the Services like Plaintiff on an outpatient or inpatient basis.

34. Plaintiff is informed and believes, and based thereon alleges, that the Patients had preferred provider organization ("PPO") plan benefits or point of service ("POS") plan benefits that allowed them to seek medically necessary benefits, whether in-network or not, and were entitled to reimbursement for their claims because Plaintiff was an out-of-network provider of the Services. The Patients' claims should not have been denied or underpaid as the Plans provide coverage for the Services performed by Plaintiff.

35. Plaintiff is informed and believes, and based thereon alleges, that each of the Patients whose claims are at issue in this lawsuit required the Services. Each of the Patients chose PPO insurance rather than health maintenance organization ("HMO") insurance through their employers so that they could receive plan benefits from the physicians and other medical providers of their choice, regardless of whether the health care practitioners were in-network or out-of-network with Anthem. Defendants, who administer and/or underwrite the PPO insurance for the Patient's employers, advertise, publicize and represent on their websites, in their literature and in commercials that the benefit of their PPO policies include the freedom to choose any doctor for any and all health care needs.

36. As an essential health benefit, Plaintiff is informed and believes, and based thereon alleges, that Defendants authorized the Services for the Patients and that each of the Patients had coverage which included coverage for the Services provided by Plaintiff.

37. Plaintiff is informed and believes, and based thereon alleges, that no provisions in any of the Plans, whether in the Summary Plan Descriptions ("SPDs") and/or Evidence of Coverage ("EOC") documents justified the failure of Anthem to

pay the fees for services charged by Plaintiff, whether by underpayment or to pay nothing.  These actions by Defendants were arbitrary, capricious and improper.

**38.**	Plaintiff is informed and believes, and based thereon alleges, that no provisions in the Plans justified the failure to issue a final decision or denial on any of the Patient claims, and no provision in the subject Plans justified the failure and refusal of Anthem to issue an EOB statement, delineating and explaining the justification or rationale for refusing to pay, cover and reimburse the Patient claims or to adjust those claims.  These failures and refusals by Anthem were therefore arbitrary, capricious and a breach of Anthem's fiduciary duties to plan participants. These failures and refusals were also violative of regulations promulgated under ERISA by the Department of Labor, which require that claims be adjudicated by the claims administrator (*e.g.,* Anthem) within 45 days after receipt of the claim and were also violative of the Plans and SPDs issued and adopted by Anthem.

**39.**	Plaintiff is informed and believes, and based thereon alleges, that for each Plan involved in this lawsuit, the terms of the Plan: (a) provided coverage for the Services rendered by Plaintiff to each Patient for whom reimbursement, payment and coverage is sought; and (2) dictated that these covered services be paid according to a specific reimbursement rate (such as the reasonable and customary fees for services charged by Plaintiff or according to other formulae or allowable rates expressly and specifically provided in the Plans).

**40.**	Plaintiff is informed and believes that each of the Patients intended to assign and have assigned all of their legal and equitable rights to payment and to assert ERISA remedies under the Plans to Plaintiff in writing, including but not limited to their rights to recover the benefits owed to them by Anthem to Plaintiff, by and through an irrevocable assignment of all of their rights, title and interest in and to the claims against Anthem (the "Assignments").  Plaintiff is informed and believes that through all or some of these Assignments Patients intended to confer upon Plaintiff the right to stand in the shoes of the Patients and to assert all or some

of the rights held by the Patients as to Anthem and/or as to the Plans administered by Anthem, including but not limited to all rights, powers and equitable remedies of the Patients, the right of Plaintiff to substitute in as a party or plaintiff in any past, present or future litigation regarding the Patient's claims against Anthem, the right to the proceeds of all legal fees and costs, if specifically awarded, and any interest if specifically awarded, and the right to make and effect collections, including the commencement of legal proceedings on behalf of the Patients. *See supra* ¶¶ 28-30.

**41.**     Plaintiff is informed and believes that in compliance with the terms of each Plan, Plaintiff and/or the Patients have exhausted any and all claims review, grievance, administrative appeals, and appeals requirements by submitting letters, appeals, grievances, requests for reconsideration and request for payment to Anthem.

**42.**     Alternatively, all review, appeal, administrative grievances or complaint procedures are excused as a matter of law, are violative of Plaintiff's due process rights, are or would be futile, or are otherwise unlawful, null, void and unenforceable. Anthem's pattern of behavior and refusal to reimburse Plaintiff rendered all potential administrative remedies futile. As a result of Anthem's actions and/or omissions, Anthem is estopped from asserting that Plaintiff has failed to exhaust its administrative remedies under ERISA. Alternatively, by Anthem's failure and refusal to establish, maintain and follow a reasonable claim procedure process, Plaintiff and/or its Patients have exhausted the administrative remedies available under the Plans and are entitled to pursue this action, inasmuch as Defendants have failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim, in violation of 29 C.F.R. § 2560.503-1(l).

//

//

**PLAINTIFF'S CLAIMS AGAINST ANTHEM**

**43.** The Patients have not been identified by name in this Complaint to protect their right of privacy. Plaintiff has previously provided to Defendants an unredacted list of the patient claims at issue in this Complaint. Plaintiff is informed and believes, and based thereon alleges, that the amount still due and owing from Anthem to Plaintiff resulting from the Services Plaintiff provided to the Patients is in excess of $20 million.

**44.** Each of the Patients received the Services from Plaintiff during hospitalization. The Services before January 1, 2021 were for CPT Code 92586. On and after January 1, 2021, the Services were for CPT Code 92560. Federal law recognizes that audiological diagnostic testing is a covered benefit under Medicare, and California has implemented a statewide comprehensive Newborn Hearing Screening Program ("NHSP"), the purpose of which is to identify hearing loss in infants and guide families to the appropriate services needed to develop communication skills.

**45.** California's Department of Health Care Services ("DHCS") has specifically stated that California cannot dictate the fee that NHSP certified hospitals and outpatient providers charge for newborn hearing screening services.

**46.** Payments are due and owing by Defendants to Plaintiff for the Services provided to the Patients during hospitalization, all of whom were insured, members, policy holders, certificate holders or otherwise covered for charges by Plaintiff through policies or certificates of insurance issued, underwritten and/or administered by Defendants.

**47.** Plaintiff is informed and believes, and based thereon alleges, that each of the Patients for whom claims are at issue was an insured of Anthem either as a subscriber to coverage or a dependent of a subscriber to coverage under a policy or certificate of insurance issued, administered and/or underwritten by Defendants. Plaintiff is further informed and believes, and based therein alleges, that each of the

Patients for whom claims are at issue was covered by a valid insurance agreement with Anthem for the specific purpose of ensuring that the Patients would have access to medically necessary treatments, care, procedures and related care by out-of-network providers such as Plaintiff.

48. In the alternative, Plaintiff is informed and believes, and based thereon alleges, that some of the Patients for whom claims are at issue were covered by self-funded plans which were administered by Anthem. The identify of those Plans which are self-funded is known to Anthem, but is presently unknown to Plaintiff. Those self-funded Plans provided coverage to the Patients either as a subscriber to coverage or as a dependent of a subscriber to coverage under the certificate of coverage administered by Defendants. For these self-funded plans, Plaintiff is informed and believes, and based thereon alleges, that Anthem was a claim fiduciary, plan fiduciary and administrator charged with making claim determinations on behalf of the Plans.

49. Plaintiff is informed and believes, and based thereon alleges, that each of the Patients for whom claims are at issue was covered by a valid benefit Plan, providing coverage for the Services, for the specific purpose of ensuring that the Patients would have access to medically necessary treatments, care and procedures by out-of-network providers like Plaintiff and ensuring Anthem would pay for the health care expenses incurred by the Patients for the services rendered by Plaintiff.

50. At all relevant times, each of the Patients received the Services from Plaintiff. Upon rendition of the Services to each of the Patients, each of the Patients became legally indebted, responsible and liable to Plaintiff for the full cost of and for payment of the Services. Prior to the rendition of care by Plaintiff, each of Patients guaranteed that they would be legally responsible, liable and indebted for the full cost of and for payment of those services to be rendered by Plaintiff.

51. Each of the Patients requested treatment and professional services, including the Services. Each of the Patients received the Services from Plaintiff

after entering into a written admission agreements in which the Patients agreed to be obligated, legally responsible and liable for the full amount of the charges incurred for treatment and professional services, including the Services.

52.     Each of the Patients presented his or her insurance card, which card identified the Patient as an insured, subscriber and/or member of Anthem. These identification cards, which were issued by Anthem, did not identify whether the coverage was underwritten by Anthem as an insurer or whether Anthem was acting as a third-party administrator of a self-funded plan.

53.     As a result of Anthem's offer to pay for the Services rendered by Plaintiff to each of the Patients, Plaintiff was induced to and did provide and render the Services to the Patients at great cost to itself, fully expecting that it would be paid for the Services after submission of claims to Anthem. This expectation was further buttressed by the longstanding interactions, and business practices and customs that had been established between Plaintiff and Anthem over several years, which had resulted in Anthem's processing and payments of hundreds of prior claims on behalf of Patients who had received the Services from Plaintiff.

54.     Anthem never advised Plaintiff whether a Patient's claim was insured or underwritten by Anthem, or whether Anthem was acting in the capacity of an administrator only in adjusting that claim on behalf of a self-funded plan. To date, Anthem has not identified whether or which of the subject claims are insured, underwritten or only administered by Anthem. As appropriate, Plaintiff will seek leave to identify any and all self-funded Plans as self-funded and identify the proper name of that entity.

55.     At all relevant times herein, representatives and agents of Defendants advised Plaintiff that each of the Patients was insured and covered for and was an eligible member or subscriber entitled to coverage under respective Plans for the Services Plaintiff rendered, that Plaintiff was authorized to render the Services, and

that Anthem would pay Plaintiff for performance of the Services rendered by Plaintiff upon its submission of claim forms and invoices to Anthem.

56.     At all relevant times herein, Anthem led Plaintiff to believe that Plaintiff would be paid a portion or percentage of its total billed charges, equivalent to the usual customary and reasonable amount charged by other similar provider in the same geographical area or that other methodologies would be used to determine the amount that Anthem would pay Plaintiff.  In reliance upon the representations of Anthem that Anthem would pay for the Services to be rendered to each Patient, Plaintiff was induced to, and did provide and render the Services to each of the Patients.

57.     Plaintiff is a beneficiary (as that term is defined by 29 U.S.C. § 1002(8)) of the benefits payable under the subject Plans and insurance policies issued to and covering the Patients and by virtue of the assignment of rights given by each of the Patients to Plaintiff.

58.     At all relevant times herein, Plaintiff was authorized by law to act on behalf of the Patient with respect to the filing of claims with Anthem, demanding production of documents from Anthem, filing appeals on behalf of the Patients with Anthem, and otherwise pursuing actions on behalf of the Patients with respect to the Patients' Plans in accordance with 29 C.F.R. § 2560.503.1(b)(4).

59.     Despite requesting access from Defendants, Plaintiff is not privy to, nor does it possess or have access to any of the EOC documents, SPDs, Plan Documents, policies or Certificates of Insurance which are issued to the Patients. As such, Plaintiff does not have knowledge of or access to the definition of an "allowable amount" or "allowable benefit" as that term is defined or used by Anthem, at any time prior to the date that Anthem processes, adjusts and pays each claim.  These definitions were not imparted by Anthem to Plaintiff during any insurance verification or authorization process.

**60.**    At all relevant times herein, Anthem has improperly or failed to pay and refused to pay Plaintiff for the Services rendered to Anthem's insureds, subscribers and members by Plaintiff.  For each of the Patient claims at issue in this action, Plaintiff provided the Services to members and insureds of Anthem.

**61.**    Following the rendition of the Services by Plaintiff to the Patients, invoices, bill and claims were submitted to Defendants for adjustment and payment.  Plaintiff also provided medical records to Anthem for the treatment it provided to the Patients, if requested.

**62.**    For each of the claims at issue, Anthem failed and refused to adjust the claims and to issue EOB statements to Plaintiff in a timely manner as required by federal law.  These failures constituted an effective denial of benefits, although an actual denial of benefits was not communicated by Anthem.  By virtue of its failure and refusal to issue EOB statements and to adjust the claims, Plaintiff was precluded and inhibited from appealing the effective denial of payment on the subject claims.

**63.**    For each of the claims at issue in this case, Anthem failed and refused to complete the claim examination process, delayed issuing EOB and/or explanation of payment ("EOP") statements to Plaintiff, has requested unnecessary and irrelevant information and documentation from Plaintiff which has no bearing on or relevance to the claim examination process, has failed and refused to provide notification of the reasons for its failure and refusal to pay benefits and has failed to engage in a meaningful appeal process with Plaintiff. For each of the claims at issue in this case, Anthem has failed and refused to pay benefits in any amount whatsoever, leaving the entire charges unpaid and owed.

**64.**    To the extent Anthem issued any EOB statements, Anthem did not explain how the claims were adjusted, disallowed or denied, and Anthem provided vague, ambiguous and uncertain explanations for the manner by which Anthem based its claim determination.  To the extent Anthem issued any EOB statements,

each was uninformative, false and misleading, thereby depriving Plaintiff and the Patients from an ability to intelligently engage in the appeal process or understand the basis and rationale for Anthem's denial of benefits.

65.     Plaintiff is informed and believes, and based thereon alleges, that Anthem's actions violated 29 U.S.C. § 1133, 29 C.F.R. § 2560.503-1(g) and 26 U.S.C. § 9812(4), all due to Anthem's failure to provide a description of the Plain's review procedures and the time limits or deadlines applicable to such procedures.

66.     In each of the EOB statements issued by Anthem, if any, Anthem failed to advise Plaintiff and/or the Patients of the right of the Patients and/or Plaintiff to appeal the adverse claim determination made by Anthem in any of the EOB statements concerning the right to appeal, file a grievance, seek reconsideration or otherwise engage in an administrative review process, as required by 29 U.S.C. § 1133, 29 C.F.R. § 2560.503-1(g) and 26 U.S.C. § 9812(4).

67.     Furthermore, on or about October 3, 2019 Defendants sent letters (the "October Letters") to certain hospitals with which Plaintiff contracts to perform the Services that contained false information about Plaintiff's billing practices.

68.      Defendants falsely told certain hospitals in the October Letters that Plaintiff improperly was separately billing Anthem and Anthem members for the Services despite the hospital already having paid for this service through Anthem's fixed payment rate to the hospital.

69.     Defendants represented to the hospitals that as a result of Plaintiff's billing practices Anthem has made duplicative reimbursement payments to Plaintiff and the hospitals for "services relating to the mother's admission" amounting to "millions of dollars", threatened to hold the hospitals responsible for Anthem's losses if Plaintiff did not return the funds, and directed the hospitals to

provide written confirmation that they would instruct Plaintiff to cease billing Anthem and its member/patients.

70.     Defendants also misrepresented to the hospitals that Plaintiff was engaged in "balance billing" of Anthem members, and that as a result of this practice numerous grievances from members have been filed with Anthem along with regulatory inquiries.

71.     Plaintiff alleges that the statements Defendants made in the October Letters were false and misleading made to disrupt Plaintiff's business and contracts with the hospital.

72.     Plaintiff contends that Defendants' obligation is to reimburse the provider of the services performed, in this case Plaintiff, not the hospital.

73.     Plaintiff contends that it does not bill for services to the mother as misstated by Defendants in the October Letters, instead billing only for hearing screenings to the newborn infants.

74.     Plaintiff contends it has not balance billed Anthem members, beneficiaries, or insureds as Defendants falsely represent in the October Letters. Rather Plaintiff submits timely and appropriate claims directly to Anthem for the services Plaintiff provides to Anthem's members, beneficiaries and/or insureds. Only after receipt of an EOB from Defendants setting forth patient responsibility, does Plaintiff send an account statement reflecting a balance due to the patient, which is based upon Defendants' determination of that patient's responsibility.

## FIRST CLAIM FOR RELIEF

### (Claims for Benefits Pursuant to 29 U.S.C. § 1132(a)(1)(B)

### Against All Defendants)

75.     Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though set forth herein.

76.     This claim is alleged by Plaintiff for relief in connection with claims for treatment rendered to members of an ERISA Plan. This claim seeks to recover

benefits, enforce rights and clarify rights to benefits under 29 U.S.C. § 1132(a)(1)(B). Plaintiff has standing to pursue these claims as assignee of the Patients' benefits under the ERISA Plans. As the assignee of benefits under the ERISA Plans, Plaintiff is a "beneficiary" entitled to collect benefits under the terms of the ERISA Plans, and is the "claimant" for purposes of ERISA.

**77.** Plaintiff is informed and believes, and based thereon alleges, that Defendants are the insurer, sponsor, and/or financially responsible payer, serves as its designated plan administrator, and/or services as the named plan administrator's designee. Plaintiff is further informed and believes, and based thereon alleges, that with respect to each of the ERISA Plans at issue in this case that are self-insured plans, but which do not specifically designate a plan administrator, Anthem effectively controls the decision whether to honor or deny the a claim under the Plan, exercises authority over the resolution of benefits claims, and/or has responsibility to pay the claims. Anthem also plays the role as the *de facto* plan administrator for such Plans.

**78.** Plaintiff is informed and believes, and based thereon alleges, that for each of these claims and for each of the involved Patients, Defendants have failed and refused to pay, process or adjust these claims in an appropriate fashion by, among other acts and omissions:

> **a.** Delaying the processing, adjustment and/or payment of claims for periods of time greater than 45 days after submission of the claims in violation of 29 C.F.R. § 2560.503-1(f)(2)(iii)(B);
>
> **b.** Failing and refusing to provide any notice and/or explanation for the denial of benefits, payments or reimbursement of the claims of each of the Patients, in violation of 29 U.S.C. § 1133(1);

**c.** Failing and refusing to provide an adequate notice and/or explanation for the denial of benefits, payments or reimbursement of claims of each of the Patients, in violation of 29 U.S.C. § 1133(1);

**d.** Failing and refusing to provide an explanation for the denial of benefits, payments or reimbursements of claims of each of the Patients, and by failing and refusing to set forth the specific reasons for such denials, all in violation of 29 U.S.C. § 1133(1);

**e.** Failing and refusing to provide an explanation for the denial of benefits, payments or reimbursements of claims of each of the Patients, written in a manner calculated to be understood by the participant, in violation of 29 U.S.C. § 1133(1);

**f.** Failing to afford Plaintiff and/or its Patients with a reasonable opportunity to engage in an appeals process, in violation of 29 U.S.C. § 1133(2);

**g.** Failing to afford Plaintiff and/or its Patients with a reasonable opportunity to engage in meaningful appeal process which was full and fair, in violation of 29 U.S.C. § 1133(2);

**h.** Failing and refusing to provide Plaintiff and/or its Patients with information pertaining to their rights to appeal, including not limited to those deadlines for filing appeals and/or the requirements that an appeal be filed, in violation of 29 U.S.C. § 1133(1);

**i.** Violating the minimum requirements for employee benefit plans pertaining to claims and benefits by participants and beneficiaries, in violation of 29 C.F.R. § 2560.503-1(a), *et seq.*;

**j.** Failing and refusing to establish and maintain reasonable claims procedures in violation of 29 C.F.R. § 2560.503-1(b);

**k.** Establishing, maintaining and enforcing claims procedures which unduly inhibit the initiation and processing of claims for benefits, in violation of 29 C.F.R. § 2560.503.1(b)(3);

**l.** Precluding and prohibiting Plaintiff from acting as an authorized representative of the Patients in pursuing a benefit claim or appeal of an adverse benefit determination, in violation of 29 C.F.R. § 2560.503-1(b)(4);

**m.** Failing and refusing to design, administer and enforce their processes, procedures and claims administration to ensure that their governing plan documents and provisions have been applied consistently with respect to similarly situated participants, beneficiaries and claimants, in violation of 29 C.F.R. § 2560.503-1(b)(5); and

**n.** Failing and refusing to pay benefits for services rendered by Plaintiff which Anthem authorized, as well as rescinding the same, in violation of California Health & Safety Code § 1371.8 and California Insurance Code § 796.04.

79. The failure and refusal of Defendants to provide coverage, reimbursement, payment and/or benefits for the Services rendered by Plaintiff to the Patients who were covered by Defendants and Defendants' denial of health insurance benefits coverage constitutes a breach of the insurance plans and/or employee benefit Plans between Defendants and the Patients. Plaintiff seeks reimbursement and compensation for any and all payments which it would have received and to which it will be entitled as a result of Defendants' failure to pay benefits and cover those the Services rendered by Plaintiff to the Patients, in an amount not less than $20 million, according to proof at trial.

**80.** Defendants have arbitrarily and capriciously breached the obligations set forth in the Plans issued by Defendants, and Defendants have arbitrarily and capriciously breached their obligations under the ERISA Plans to provide Plaintiff and the Patients with health benefits.

**81.** As a direct and proximate result of the actions by Defendants, Plaintiff has been damaged in an amount equal to the amount of benefits Plaintiff should have received and to which the Patients would have been entitled had Defendants paid the proper amounts, which Plaintiff estimates to be no less than $20 million.

**82.** As a direct and proximate result of the aforesaid conduct of Defendants in failing to provide coverage as required, Plaintiff has suffered, and will continue to suffer in the future, damages, plus interest and other economic and consequential damages, for a total amount Plaintiff estimates to be no less than $20 million, or as otherwise determined at the time of trial.

**83.** Plaintiff is entitled to an award of statutory penalties against the Defendants.

**84.** Plaintiff is entitled to an award of reasonable attorneys' fees pursuant to 29 U.S.C. § 1132(g)(1). As a result of the actions and failings of the Defendants, Plaintiff has retained the services of legal counsel and has necessarily incurred attorneys' fees and costs in prosecuting this action. Furthermore, Plaintiff anticipates incurring additional attorneys' fees and costs hereafter pursing this action.

## SECOND CLAIM FOR RELIEF

### (Breach of Contract (Third Party Beneficiary) Against All Defendants)

**85.** Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though set forth herein.

**86.** Plaintiff's Second Claim for Relief, and each and every claim hereafter, includes only state law plans, none of which are governed by ERISA. Plaintiff is informed and believes, and based thereon alleges, that at least some of

the plans at issue are not governed by ERISA, although Plaintiff does not have copies of the operative plans, despite request.

87.     Plaintiff is informed, and based thereon alleges, that the Plans were executed by the Patients and the Defendants, in substantial part, for the direct and express benefit of health care providers such as non-contracting providers such as Plaintiff.  Plaintiff, at all relevant times the provider of the Services, was an intended third party beneficiary for payment of the Services provided to the Patients under their respective Plans.

88.     Plaintiff further informs and believes, and based thereon alleges, that Plaintiff is an assignee and intended beneficiary of its Patients' Plans issued by Defendants and the rights conferred thereunder.  As set forth above, the Services provided by Plaintiff are mandated by the State of California, as well as a requirement for all qualified health plans under the ACA.  To retain the status for health plans to be "qualified," Defendants were required to ensure the Services were provided, the consideration for which required Defendants to provide a benefit to Plaintiff in the form of payment for the Services.

89.     As set forth in Exhibits A, B, C, D and E, Plaintiff's lawsuit against Defendants is consistent with the objectives of the Patients' Plans and a reasonable expectation by Defendants.

90.     Plaintiff is entitled to be paid for the services rendered based on the existence and terms of the insurance policies covering each Patient.

91.     Plaintiff confirmed that each Patient referenced herein was covered by a policy issued by Defendants.  At great expense, Plaintiff provided the Services to the Patients.

92.     After providing the Services, Plaintiff submitted appropriate claim forms to Defendants, or their agents, requesting compensation for the care and treatment provided to the Patients.

**93.** Plaintiff either did not receive full, reasonable, and often no compensation for the services provided.

**94.** Plaintiff is informed and believes, and based thereon alleges, there is no legally operative term in the Plans that permit Defendants to deny Plaintiff full and/or reasonable compensation for the services Plaintiff provided to the Patients in good faith. Plaintiff duly performed under the insurance contract and must be paid by Defendants.

**95.** Plaintiff is informed and believes, and based thereon alleges, that the Patients, and each of them, have performed all of the obligations required of them under their respective Plans with Defendants, except as otherwise may have been excused or prevented by Defendants.

**96.** There is now due, owing and unpaid by Defendants to Plaintiff a sum not less than $20 million, plus pre-judgment interest, according to proof.

**THIRD CLAIM FOR RELIEF**

**(Breach of Contract (Assignment)    Against All Defendants)**

**97.** Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though set forth herein.

**98.** Plaintiff is informed, and based thereon alleges, that the Plans obligated Defendants to reimburse and/or pay for the Patient's medical care pursuant to the Plans, as applicable. As set forth above, the Services provided by Plaintiff are mandated by the State of California, as well as a requirement for all qualified health plans under the ACA. To retain the status for health plans to be "qualified," Defendants were required to ensure the Services were provided, the consideration for which required Defendants to provide a benefit to Plaintiff in the form of payment for the Services.

**99.** As set forth in Exhibits A, B, C, D and E, Plaintiff's lawsuit against Defendants is consistent with the objectives of the Patients' Plans and a reasonable expectation by Defendants.

**100.** When the Patients obtained the Services from Plaintiff, they assigned their rights to any reimbursement and/or payment from Defendants for treatment.

**101.** Pursuant to these assignments, Plaintiff was entitled to payment from Defendants for the Services rendered based on the existence and terms of the insurance policies covering each Plaintiff, at the rates set forth in the Plans. Despite written demand from Plaintiff, Defendants have failed and refused to pay such amounts.

**102.** At great expense, Plaintiff thereafter provided the Services.

**103.** After providing the Services, Plaintiff submitted appropriate claim forms to Defendants, or their agents, requesting compensation for the care and treatment provided to the Patients.

**104.** Plaintiff did not receive full, reasonable, and often no compensation for the Services Plaintiff provided.

**105.** Plaintiff is informed and believes, and based thereon alleges, there is no legally operative term in the Plans that permit Defendants to deny Plaintiff full and/or reasonable compensation for the Services Plaintiff provided to the Patients. Plaintiff duly performed under the insurance contract and must be paid by Defendants.

**106.** Plaintiff is informed and believes, and based thereon alleges, that the Patients, and each of them, have performed all of the obligations required of them under their respective Plans with Defendants, except as otherwise may have been excused or prevented by Defendants.

**107.** There is now due, owing and unpaid by Defendants to Plaintiff a sum not less than $20 million, plus pre-judgment interest according to proof.

//

//

//

//

## FOURTH CLAIM FOR RELIEF

### (Open Book Account Against All Defendants In the Alternative)

**108.** Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though set forth herein.

**109.** Within the last four years Defendants became indebted to Plaintiff on an open book account in a sum not less than $20 million, plus daily interest through the entry of judgment.

**110.** Plaintiff demanded payment from Defendants and Defendants have refused and continue to refuse to pay. There is now due, owing and unpaid an open book account in the sum not less than $20 million, plus daily pre-judgment interest until the entry of judgment.

## FIFTH CLAIM FOR RELIEF

### (Promissory Estoppel Against All Defendants)

**111.** Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though set forth herein.

**112.** Plaintiff alleges its Promissory Estoppel claim for relief as an alternative claim should this Court find Plaintiff's breach of contract claims insufficient.

**113.** Plaintiff relied on Defendants' promises to reimburse it for providing the Services to Defendants' insureds, and defendants, and each of them, should reasonably have expected to induce Plaintiff's action in providing treatment based on that reliance.

**114.** As set forth above, the Services provided by Plaintiff are mandated by the State of California, as well as a requirement for all qualified health plans under the ACA. To retain the status for health plans to be "qualified," Defendants were required to ensure the Services were provided, the consideration for which required Defendants to provide a benefit to Plaintiff in the form of payment for the Services.

**115.**    As set forth in Exhibits A, B, C, D and E, Plaintiff's lawsuit against Defendants is consistent with the objectives of the Patients' Plans and a reasonable expectation by Defendants.

**116.**    Plaintiff has suffered substantial detriment in reliance upon Defendants' promises in providing the Services to Defendants' insureds, including without limitation the benefits owed in the amount of at least $20 million, the interruption in Plaintiff's business, lost business opportunities, lost profits and other consequences, all according to proof.

**117.**    As a direct and proximate result of Defendants' breach of their promise, Plaintiff has sustained general and incidental damages, and statutory and prejudgment interest, in excess of the jurisdictional minimum of this court in an amount to be determined at trial. Under this claim for relief, and aside from the consequential damages set forth above, Plaintiff seeks to recover its fully-billed charges.

## SIXTH CLAIM FOR RELIEF

### (*Quantum Meruit* Against All Defendants In the Alternative)

**118.**    Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though set forth herein.

**119.**    Plaintiff alleges its *Quantum Meruit* claim for relief as an alternative claim should this Court find Plaintiff's breach of contract claims insufficient.

**120.**    Plaintiff, as an out-of-network provider, provided the Services to the Patients during approved hospitalization who were insured under Anthem Plans, preceded by authorization and verification of benefits by Defendants.

**121.**    Defendants by words and conduct, requested that Plaintiff provide the Services to their insureds, which benefitted Defendants in terms of meeting their legal and contractual obligations to provide or arrange for the provision of access to health care services in a timely manner.

**122.** Consistent with the trade custom, Plaintiff provided the subject treatment with the expectation, which was fully and clearly understood by Defendants and each of them, that Plaintiff would be compensated for the Services.

**123.** In addition to reliance upon Defendants' words, conduct and the trade custom, Plaintiff provided the Services with the expectation that Plaintiff would be compensated for such services based upon the prior course of conduct between Plaintiff and defendants.

**124.** Defendants and each of them were fully aware of the dollar amounts charged by Plaintiff for the Services. Defendants, and each of them, were also aware that Plaintiff did not provide the subject treatment for free, and that Plaintiff would submit its total billed charges for the Services and expect to be compensated.

**125.** Defendants and each of them also knew Plaintiff was not an in-network provider who had agreed to accept any pre-negotiated contract rates.

**126.** Whereas payment by Defendants, and each of them, was either sporadic, inadequate, or nothing, and at some point in time Defendants ceased reimbursing out-of-network providers, including Plaintiff, for any treatment rendered, including the Services.

**127.** Defendants and each of them were at all times obligated under Federal law and California law to provide or arrange for the provision of access for their insureds to certain health care services in a timely manner, including the Services, and sought to satisfy this duty by providing a network of in-network providers for their insureds to choose from so they may receive the necessary treatment at the lowest expense to the insurer and the insured.

**128.** As set forth above, the Services provided by Plaintiff are mandated by the State of California, as well as a requirement for all qualified health plans under the ACA. To retain the status for health plans to be "qualified," Defendants were

required to ensure the Services were provided, the consideration for which required Defendants to provide a benefit to Plaintiff in the form of payment for the Services.

129.   As set forth in Exhibits A, B, C, D and E, Plaintiff's lawsuit against Defendants is consistent with the objectives of the Patients' Plans and a reasonable expectation by Defendants

130.   Defendants are also liable to pay Plaintiff for treating the Patients and claims at issue due to a contract implied in law based on the network gap concept as discussed hereinabove. California law requires that where health insurance carriers such as Defendants cannot provide their insureds access to the needed healthcare providers on an "in-network" basis, the carriers shall pay any "out-of-network" provider such as Plaintiff the amounts necessary to limit the out-of-pocket cost to the Patient as if an in-networker provider had provided the same treatment and services. In effect, this makes an out-of-network provider eligible to receive up to 100 percent of its fully-billed charges (since the Patients would be responsible for only their relatively nominal co-payments), or in any case substantially more than the contracted rates agreed to by an in-network provider.

131.   Plaintiff is informed, and based therein alleges, that, there was a network gap with respect to the Patients' payments which are at issue in this action, since Defendants failed to arrange for any in-network providers in the Patients' localities who conducts the Services. Indeed, if Defendants objected to their insureds obtaining treatment from an out-of-network provider such as Plaintiff, why did they refuse or otherwise fail to refer those Patients to an in-network provider. The only reasonable inference is that there were no such in-network providers who were in the position to treat the Patients at issue. As a result, those Patients had no choice but to seek the services and treatments rendered by Plaintiff, who did so in good faith and in reliance on Defendants' expected compliance with the applicable California healthcare as it pertains to a "network gap."

132.    As part of verifying benefits and authorizing treatment when necessary, Defendants, and each of them, knew that Plaintiff was providing the Services to Defendants' insureds, and promised to pay Plaintiff for the treatment.

133.    Defendants sold each Patients' Plan and accepted the premium payments, and permitted their insureds to seek the Services, confirmed to Plaintiff that the subject Patients were indeed covered by Defendants, and then, on unspecified, specious and/or unlawful grounds, have since refused to fully compensate Plaintiff for the services rendered to, and benefitted by, the Patients. Defendants were, and are, enriched by keeping the insurance premiums for such Plans without having to pay for the Services they promised to cover in their Plans.

134.    Plaintiff is entitled to be paid its usual and customary fees for the Services, without regard to the payment provisions in Defendants' policies and/or the payments owing to Plaintiff under California law based on the existence of a "network gap" as to some or all of the Patients at issue.

135.    The fair and reasonable value of the non-reimbursed Services that Plaintiff provided to the Patients is at least $20 million.

136.    Defendants and each of them, however, have failed and refused, and continue to refuse, to reimburse Plaintiff for the reasonable and customary value of Plaintiff's Services as required by law.

137.    As a direct and proximate result of Defendants' failure to pay for the Services rendered, Plaintiff has suffered general and incidental damages according to proof, and is entitled to statutory and pre-judgment interest.

138.    As a direct and proximate result of Defendants' failure to pay for the Services rendered, Plaintiff has incurred and continues to incur economic loss, including the benefits owed in the amount of at least $20 million, the interruption in Plaintiff's business, lost business opportunities, lost profits and other consequences, all according to proof.

## SEVENTH CLAIM FOR RELIEF

### (Defamation Against All Defendants)

**139.** Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though set forth herein.

**140.** Plaintiff's business is reliant on its relationships with hospitals that are in need of Services from Plaintiff. Defendants knew and know that Plaintiff contracts with hospitals for its Services.

**141.** Defendants intentionally sent the October Letters to Plaintiff's hospital clients publishing false, defamatory and unprivileged statements about Plaintiff's billing practices, threatening to hold the hospitals responsible for Anthem's losses if Plaintiff did not return the funds, and directing the hospitals to provide written confirmation that they would instruct Plaintiff to cease to bill Anthem and its member/patients.

**142.** Each of the CPT codes falls into the category of maternal and newborn care, which are "essential health benefit[s]" under the ACA. 42 U.S.C. § 18022(b)(1)(D). To be a "qualified health plan" under the ACA, a health plan, in part, must provide the essential health benefits set forth in Section 18022. 42 U.S.C. § 18021(a)(1)(B).

**143.** Each of the CPT codes require the audiologist or physician to personally perform, interpret and report the procedures. Moreover, Medicare guidelines allowed the outside provider to bill separately for CPT Code 92586.

**144.** Section 80 of the Medicare Benefit Policy Manual, Chapter 15, specifically states: Because the diagnostic test benefit . . . is separate and distinct from the incident to benefit . . . diagnostic tests need not meet the incident to requirements. Diagnostic tests may be furnished under situations that meet the incident to requirements but this is not required. *However, carriers must not scrutinize claims for diagnostic tests utilizing the incident to requirements.*" (emphasis added.). CMS Manual System, Pub. 100-04 (Medicare Claims

Processing), Transmittal 2044, number 6447.8 confirmed that such providers should be paid for the diagnostic audiological test, and references this specific section in the Medicare Benefit Policy Manual (rescinded in part only to correct number 6447.7.1).

145. The information set forth in the October Letters was contrary to usual and customary billing practices for the industry. Plaintiff is informed and believes, and based thereon alleges, that Defendants knew or should have known that the information was false, and as a result, sent the October Letters with only the intention of damaging Plaintiff. Publishing to Plaintiff's clients false statements about Plaintiff has a natural tendency to injure or cause Plaintiff special damages, which it did injure and cause special damages.

146. As a direct and proximate result of Defendants' conduct, Plaintiff suffered damages in an amount to be proven at trial.

147. The conduct of Defendants as set forth in this claim for relief was intentional, willful, and calculated to cause damage to Plaintiff's lawful business. The conduct of Defendants was perpetrated with actual malice and ill will toward Plaintiff, and with the intentional and improper purpose of causing damage. There was no justifiable cause for Defendants' actions. As a result, an award of punitive damages is warranted

### EIGHTH CLAIM FOR RELIEF

**(Intentional Interference with Contractual Relations Against All Defendants)**

148. Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though set forth herein.

149. Plaintiff's business is reliant on its relationships with hospitals that are in need of Services from Plaintiff. Defendants knew and know that Plaintiff contracts with hospitals for its Services.

150. By sending the October Letters to Plaintiff's hospital clients

containing defamatory and false statements about Plaintiff's billing practices, threatening to hold the hospitals responsible for Anthem's losses if Plaintiff did not return the funds, and directing the hospitals to provide written confirmation that they would instruct Plaintiff to cease to bill Anthem and its member/patients, Defendants have interfered with Plaintiff's contracts with the hospitals .

151.    The conduct of Defendants as described above was designed to Disrupt the contractual relationships between Plaintiff and its clients, and indeed, some of the relationships have been disrupted as a result of Defendants' interference by disseminating false and/or misleading information contained within the October Letters.

152.    As one example, upon receipt of the October Letters, a chief executive officer ("CEO") from a hospital within Sutter Health ("Sutter") contacted by telephone Leonard Machado of Plaintiff.  During this call, the CEO demanded that Plaintiff cease billing all insurance companies immediately (and not just Defendants).

153.    Plaintiff is informed and believes, and based thereon alleges, that Defendants knew or should have known that the information set forth in the October Letters was contrary to usual and customary billing practices for the industry.  Plaintiff is informed and believes, and based thereon alleges, that Defendants knew or should have known that the information was false, and as a result, sent the October Letters with only the intention of damaging Plaintiff.

154.    Defendants' interference with Plaintiff's relationships resulted in pressure on the part of hospitals to force Plaintiff to enter into direct contracts with these facilities, even though the regulations mandating such actions would not go into effect until January 1, 2021.

155.    As a direct and proximate result of Defendants' conduct, Plaintiff suffered damages in an amount to be proven at trial.

156.   The conduct of Defendants as set forth in this claim for relief was intentional, willful, and calculated to cause damage to Plaintiff's lawful business. The conduct of Defendants was perpetrated with actual malice and ill will toward Plaintiff, and with the intentional and improper purpose of causing damage. There was no justifiable cause for Defendants' actions.  As a result, an award of punitive damages is warranted.

## NINTH CLAIM FOR RELIEF

### (Intentional Interference with Prospective Economic Advantage Against All Defendants)

157.   Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though set forth herein.

158.   Plaintiff's business is reliant on its relationships with hospitals that are in need of Services from Plaintiff. Defendants knew and know that Plaintiff has and seeks prospective economic relationships with hospitals for its Services.

159.   By sending the October Letters to Plaintiff's hospital clients containing defamatory and false statements about Plaintiff's billing practices, threatening to hold the hospitals responsible for Anthem's losses if Plaintiff did not return the funds, and directing the hospitals to provide written confirmation that they would instruct Plaintiff to cease to bill Anthem and its member/patients, Defendants have interfered with Plaintiff's prospective economic relationships with the hospitals.

160.   The conduct of Defendants as described above was designed to disrupt the prospective economic relationships between Plaintiff and its clients, and indeed, some of the prospective economic relationships have been disrupted as a result of Defendants' interference by disseminating false and/or misleading information contained within the October Letters.

161.   Defendants' interference with Plaintiff's prospective economic

relationships constituted an unfair business practice in violation of Business and Professions Code section 17200 as alleged above.

162. As a direct and proximate result of Defendants' conduct, Plaintiff suffered damages in an amount to be proven at trial.

163. The conduct of Defendants in interfering with Plaintiff's prospective Economic relationships was intentional, willful, and calculated to cause damage to Plaintiff's lawful business. The conduct of Defendants was perpetrated with actual malice and ill will toward Plaintiff, and with the intentional and improper purpose of causing damage. There was no justifiable cause for Defendants' actions. As a result, an award of punitive damages is warranted.

## TENTH CLAIM FOR RELIEF

### (Negligent Interference with Prospective Economic Advantage
### Against All Defendants)

164. Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though set forth herein.

165. Plaintiff's business is reliant on its relationships with hospitals that are in need of Services from Plaintiff. Defendants knew and know that Plaintiff has and seeks prospective economic relationships with hospitals for its Services.

166. By sending the October Letters to Plaintiff's hospital clients containing defamatory and false statements about Plaintiff's billing practices, threatening to hold the hospitals responsible for Anthem's losses if Plaintiff did not return the funds, and directing the hospitals to provide written confirmation that they would instruct Plaintiff to cease to bill Anthem and its member/patients, Defendants have interfered with Plaintiff's prospective economic relationships with the hospitals.

167. Due to the conduct of Defendants as described above

the prospective economic relationships between Plaintiff and some of its clients, have been disrupted as a result of Defendants' interference by disseminating false and/or misleading information contained within the October Letters.

**168.** Defendants' interference with Plaintiff's prospective economic relationships constituted an unfair business practice in violation of Business and Professions Code section 17200 as alleged above.

**169.** As a direct and proximate result of Defendants' conduct, Plaintiff suffered damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

**AS TO THE FIRST CLAIM FOR RELIEF**:

WHEREFORE, Plaintiff prays as follows:

**1.** For an order that Defendants pay to Plaintiff an amount to be determined at trial for the Claims under the ERISA Plans;

**2.** For economic damages according to proof;

**3.** For attorney's fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g);

**4.** For pre- and post-judgment interest as allowed by law; and

**5.** For such other and further relief as the Court deems appropriate.

**AS TO THE SECOND, THIRD, FOURTH, AND FIFTH, CLAIMS FOR RELIEF:**

WHEREFORE, Plaintiff prays as follows:

**1.** For an order that Defendants pay to Plaintiff an amount to be proven at trial;

**2.** For economic damages according to proof;

**3.** For pre- and post-judgment interest as allowed by law;

**4.** For attorney's fees and costs of suit incurred herein as allowed by law; and

**5.** For such other and further relief as the Court deems appropriate.

**AS TO THE SIXTH CLAIM FOR RELIEF:**

WHEREFORE, Plaintiff prays as follows:

**1.**    For an order that Defendants pay to Plaintiff an amount to be proven at trial;

**2.**    For economic damages according to proof;

**3.**    For post-judgment interest as allowed by law;

**4.**    For attorney's fees and costs of suit incurred herein; and

**5.**    For such other and further relief as the Court deems appropriate.

**AS TO THE SEVENTH CLAIM FOR RELIEF:**

WHEREFORE, Plaintiff prays as follows:

**1.**    For an order that Defendants pay to Plaintiff an amount to be proven at trial;

**2.**    For economic damages according to proof;

**3.**    For punitive damages as allowed by law;

**4.**    For pre- and post-judgment interest as allowed by law;

**5.**    For attorney's fees and costs of suit incurred herein as allowed by law; and

**6.**    For such other and further relief as the Court deems appropriate.

//
//
//
//

**AS TO THE EIGHTH, NINTH AND TENTH CLAIMS FOR RELIEF:**

WHEREFORE, Plaintiff prays as follows:

1.     For an order that Defendants pay to Plaintiff an amount to be proven at trial;

2.     For economic damages according to proof;

3.     For punitive damages as allowed by law;

4.     For pre- and post-judgment interest as allowed by law;

5.     For attorney's fees and costs of suit incurred herein as allowed by law; and

6.     For such other and further relief as the Court deems appropriate.


Respectfully Submitted,

Dated: May 9, 2024                    GARNER HEALTH LAW CORPORATION


By: */s/ Craig B. Garner*
           CRAIG B. GARNER
Attorneys for PLAINTIFF HALO
UNLIMITED, INC.

## **DEMAND FOR JURY TRIAL**

Pursuant to the Seventh Amendment to the United States Constitution, and any other applicable law, Plaintiff hereby requests a trial by jury for all claims triable by jury.

Respectfully Submitted,

Dated: May 9, 2024                GARNER HEALTH LAW CORPORATION

By: */s/ Craig B. Garner*
          CRAIG B. GARNER
Attorneys for PLAINTIFF HALO
UNLIMITED, INC.

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 9, 2024, I caused the

### **SECOND AMENDED COMPLAINT**

to be served upon counsel in the manner described below:

Participants in the case who are registered CM/ECF users will be served by the Central District CM/ECF system.

### **VIA THE CENTRAL DISTRICT CM/ECF SYSTEM**

Kenneth Smersfelt
ksmersfelt@reedsmith.com
Amir Shlesinger
ashlesinger@reedsmith.com
Lorenzo Gasparetti
lgasparetti@reedsmith.com
Benjamin C. Watson
bwatson@reedsmith.com
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA 90071-1514
Telephone: 213.457.8000
Facsimile: 213.457.8080

COUNSEL FOR DEFENDANTS

*/s/ Craig B. Garner*
Craig B. Garner
*Counsel for Plaintiff*